DAY & ZIMMERMANN, INC., et al.,
Appellants,

v.

Clifton S. STRICKLAND et ux., et al.,
Appellees.

No. 8042.

Court of Civil Appeals of Texas,
Texarkana.

June 13, 1972.

Rehearing Denied July 25, 1972.

John D. Raffaelli, Raffaelli, Hawkins & Carter, Howard Waldrop, Atchley, Russell, Hutchinson & Waldrop, Texarkana, for appellants.

Cahill Hitt, Hitt & Pesek, Texarkana, Larry Starr, Kenley, Boyland, Hawthorn, Starr & Coghlan, Longview, for appellees.

RAY, Justice.

This is an explosion case. Appellees Clifton S. Strickland and wife, Margaret Strickland (plaintiffs) brought suit against Phoenix Insurance Company under a homeowner's insurance policy for claimed damages to appellees' house resulting from an explosion on August 14, 1968. Phoenix Insurance Company (also an appellant) brought in Day & Zimmermann, Inc., (the principal appellant) as a third-party defendant, claiming that the damage, if any, to appellees' house was the result of the negligence of Day & Zimmermann, Inc., in setting off excessive explosives at its plant.

The jury rendered a verdict in favor of the Stricklands against Phoenix Insurance Company and Day & Zimmermann, Inc., and in favor of Phoenix against Day & Zimmermann, Inc. The trial court entered its judgment accordingly, awarding the Stricklands damages in the sum of $7,300.00.

Day & Zimmermann, Inc., presents thirty-three points of error for consideration by this court. Phoenix Insurance Company presents four points of error in the event that Day & Zimmermann, Inc., is successful in reversing the judgment of the trial court by pointing out that, if there is no evidence to support the finding of the jury or the evidence is insufficient to support the findings of the jury against Day & Zimmermann, Inc., then the same holding would apply as between the Stricklands and Phoenix Insurance Company.

The explosion pertinent to this case occurred at Lone Star Ordnance Plant on August 14, 1968. On this occasion, appellees lived approximately seven and one-half miles from the place of the explosion. Appellee Clifton Strickland testified that his house was in good condition prior to August 14th, 1968, and that he observed no cracks in the house when he was painting it shortly before the explosion. The detonation occurred on Wednesday night and the Strickland family left town on Friday, returning the following Monday. Cracks in the outside wall were discovered on Monday when they were brought to Strickland's attention by his neighbor, Henry Forbes. Appellee Strickland testified that the water from his well near his home was good prior to August 14, 1968, and that after that date the water was muddy. Several homeowners (some of whom were neighbors of the Stricklands) testified during the trial that prior to the explosion on the night of August 14 there were no cracks or damages to their homes but that afterwards they noticed cracks and damages. Some of these witnesses also testified that prior to August 14 the water in their wells was good, and after the explosion the water was muddy.

The testimony established that at least 3,915 lbs. of "Comp B" explosive material had been placed on a "burning bed" and ignited prior to the explosion. Ordinarily, the material would burn, but on occasions it has been known to explode rather than burn. On this occasion, a portion of the material had burned and then the explosion occurred. The controversy revolved around the issue of whether or not the unexplained detonation of the explosive material caused the damage to the Strickland house.

Appellant Day & Zimmermann, Inc., undertook to prove that the detonation of the explosives on this particular occasion did not cause any damage to the Strickland house. In the course of making such proof, Day & Zimmermann offered its Exhibit No. 23, which was identified by Wayne O. Ursenbach (appellants' expert witness) as being the original of the report he wrote summarizing the findings and test results of an ordnance team that had made tests at eighteen arsenals located over the United States. Included in the arsenals studied were Red River Arsenal and Lone Star Arsenal, located in Bowie County, Texas. One of the purposes of the study was to determine what effect, if any, the detonation of explosives at the various arsenals would have on the structures in the surrounding area, as well as its effect

on people living in the area near the ammunition plants. The group was endeavoring to determine the upper limits of quantities of explosives that could be destroyed, both from the standpoint of not damaging any structures or premises, and keeping the psychological disturbance of the people to a minimum. The tests in Bowie County were made in 1956 and in April 1957. Three members of the team, Donald T. Bailey, Robert R. Dolley and D. M. Jackman, made the tests in Bowie County. Wayne O. Ursenbach was the project supervisor, but he was not in Bowie County when the tests were made. The three members of the team doing the testing would supply the information from the tests to Ursenbach, and at the end of the tests Ursenbach wrote a report summarizing the findings at Red River Arsenal and Lone Star Arsenal, which was offered as Day & Zimmermann, Inc.'s, Exhibit No. 23. The report also included a general discussion of the effect of air blasts and ground shock as determined by the investigations at all of the eighteen arsenals. Also included in the report was an analysis of the information obtained from the other sixteen arsenals. The tests made by the investigating team were made at the direction of Mr. Ursenbach from his office in Salt Lake City, Utah. When Exhibit 23 was offered by Day & Zimmermann as evidence under the provisions of Article 3737e, Vernon's Ann.Tex.Rev.Civ.Stats., the court refused to admit the same in evidence after objection by appellees. Appellant Day & Zimmermann, Inc., complains of the trial court's ruling to the introduction of its Exhibit 23 as its first point of error.

This case presents a narrow issue of admissibility of evidence under Article 3737e (1951) familiarly referred to as the "business records exception" to the hearsay rule. A thorough search of the cases does not reveal one which has decided the exact question presented here. The following elements were presented to the trial court for its consideration in admitting Exhibit 23:

1. The original report compiled by Wayne O. Ursenbach;

2. The testimony of Ursenbach that he prepared the report;

3. The testimony of Donald T. Bailey that he helped conduct some of the tests and forwarded the results of the tests to Ursenbach to be included in the report;

4. The tests were made in 1956 and 1957;

5. The report bears the date of December 30, 1957;

6. The report was prepared by the Explosives Research Group at the University of Utah at the request of the Chief of Ordnance of the U. S. Army;

7. The report was admittedly a summarization of the data or a reduction of the data furnished to Ursenbach by the survey team in the field.

The following elements of evidence and testimony were absent:

1. The original tapes and records which were used in preparing the report (Exhibit 23).

■ We have concluded that third-party defendant's Exhibit No. 23 was not admissible in evidence and that the trial court properly excluded it for the reason that it is not a memorandum or record of an act, event or condition. The report itself is hearsay, spawned and based upon hearsay. The original tapes and memoranda prepared in the field tests constitute the "memorandum or record of an act, event or condition" as contemplated by Article 3737e, and while that information itself is hearsay, it may be admitted into evidence as a business record under Article 3737e which provides a statutory exemption for such records from the hearsay rule. However, in order for such a business record to

be admitted into evidence it is necessary for the judge to find:

"(a) It was made in the regular course of business;

"(b) It was the regular course of that business for an employee or representative of such business with personal knowledge of such act, event or condition to make such memorandum or record or to transmit information thereof to be included in such memorandum or record;

"(c) It was made at or near the time of the act, event or condition or reasonably soon thereafter."

Article 3737e further provides that the identity and mode of preparation of the memorandum or record as a business record may be proved by the testimony of one of the following:

1. The entrant,

2. The custodian, or;

3. Other qualified witness even though he may not have personal knowledge as to the various items or contents of such memorandum or record.

In Railroad Commission of Texas v. Southern Pacific Company, 468 S.W.2d 125 (Tex.Civ.App. Austin 1971, writ ref'd, n. r. e.), the court stated:

"The Supreme Court held in 1969 that a tabulated schedule or summary of voluminous records may be admitted, in the discretion of the trial court, to expedite trial and aid of the trier of fact, but that this rule assumes that the records themselves are admissible. Cooper Petroleum Company v. LaGloria Oil and Gas Co., 436 S.W.2d 889 (Tex.Sup.1969). The summaries tend to prove nothing except the contents of the records themselves and standing alone the tabulations, or summaries, are hearsay and have no probative value."

Essentially, the court held that it was error for the trial court to admit into evidence the exhibits of the railroad company under the "business records exception" when the original documents upon which the exhibits (summaries) were based were not introduced. The railroad offered the testimony of its witness who was an expert in cost analysis for the railroad. The expert expounded upon his conclusions and opinions based upon his investigations of the records of the company. The court held that such testimony was inadmissible, and stated:

"Assuming for purposes of further examination of the evidence, that Boudreaux was qualified as an expert in making cost analyses for the railroad, if his opinions and conclusions were based substantially on agency records and central accounting records of the railroad, the records being hearsay as to the Commission should have been introduced as business records under the exception accorded by Article 3737e. Without introduction of the records, the opinions expressed as an expert are based almost entirely on hearsay. Although Boudreaux testified that he frequently visited Elsa (a railroad station) and personally observed the agent at work, his report (exhibits 13, 16 and 18) admittedly was based largely upon records at the station and central accounting records of the railroad as found in the computer sheets. He noted discrepancies between the agency records and the central accounting records which he corrected for his report. Boudreaux's summary of train stops (exhibit 15) was taken entirely from exhibit 21, the abstract of the electronically kept records which we have held were not admitted in evidence as required by Article 3737e as an exception to the hearsay rule. Hearsay will not become relevant and substantial merely because it is offered through an expert witness if the facts are not known to the witness or proved to be true."

We have reviewed the opinion of the Texas Supreme Court in Loper v. Andrews, 404 S.W.2d 300 (Tex.Sup.1966) and

do not think the case to be applicable. There the court held that the statute providing for reception in evidence of entries made in the regular course of business does not render hospital entries admissible without exception, but the statute does so only in those instances where it can be said that the diagnosis in the hospital record records a condition resting in reasonable certainty. There the opinion of the physician was an entry in the hospital record which was sought to be introduced into evidence under the business records exception to the hearsay rule. In the case presently under consideration, the original business records were not offered into evidence, and therefore no question has been presented as to the admissibility of an expert opinion recorded in the entries of the testing team.

In Sherwin-Williams Company v. The Perry Company, 424 S.W.2d 940 (Tex.Civ. App. Austin 1968); 431 S.W.2d 310 (Tex. Sup.1968), the Court of Civil Appeals held that the testimony of plaintiff's employee and head of plaintiff's accounting firm, based on prior examination of the employee's books and records as to the number of diving boards returned by customers and to the cost of returned boards, was inadmissible hearsay where the books were not produced in court. There was no showing that they had been kept in such manner as to make them admissible, and neither employee nor accountant had had any business connection with plaintiff at the time most of the entries were made.

■ We hold that because the records made by the field testing teams were not introduced into evidence, the report summarizing such data was not admissible. Further, the report contained the opinions of Mr. Ursenbach, based upon evidence that had not been made available to appellee Strickland for cross-examination purposes. If the data and records that are introduced are complicated or voluminous, an expert who has examined them may testify as to his calculations, summaries or conclusions to aid the court or jury to understand them. The testimony of the expert relative to his calculations, summaries or conclusions about records or data not introduced into evidence makes such testimony double-hearsay, since the data or records are hearsay until properly admitted as business records under Art. 3737e. Sherwin-Williams Company v. Perry, supra; Cross v. Houston Belt & Terminal Ry. Co., 351 S.W.2d 84 (Tex.Civ.App. Houston 1961, writ ref'd n. r. e.); Texas Brewing Company v. Walters, 43 S.W. 548 (Tex.Civ.App.1897, no writ); 19 A.L.R.3rd 1008, 11 A.L.R.3rd 1377, 21 A.L.R.2d 773. See also Lewis, Savings & Loan Commissioner v. Southmore Savings Ass'n, 15 Tex.Sup. Court Journal p. 268 (April 8, 1972). The first point of appellant Day & Zimmermann, Inc., is overruled.

■ The second point of error presented by Day & Zimmermann, Inc., complains of the trial court's refusal to let its witness, Johnny Moore, an architect, testify to anything he observed, or to any opinion he formed from what he observed, about the condition of appellees' house when the witness examined the same at a time when neither appellee nor appellees' attorney was present. We have concluded that the trial court did not abuse its discretion in refusing to let Moore testify under the circumstances. Moore had already examined the house once, both inside and out, when appellees and their attorney were present. Appellees need not voluntarily submit their property to unlimited inspections. Rule 167, Texas Rules of Civil Procedure, "Discovery and Production of Documents and Things for Inspection, Copying, or Photographing", provides a method for the court to "order any party to permit entry upon designated land or other property in his possession or control for the purpose of inspecting, measuring, surveying or photographing the property or any designated object or operation thereon which may be material to any matter involved in the action." Appellant Day & Zimmermann, Inc., did not make application for a court

order to allow Johnny Moore to further inspect appellees' dwelling, nor did it seek the voluntary permission of appellees to further inspect the house. Since appellant had no further authority to inspect the house, either voluntarily given by appellees or court ordered, it cannot now complain of the court's refusal to let its witness testify about the information he gained through the unauthorized inspection. One of the purposes of Rule 167 is to protect a party from undue annoyance, embarrassment, oppression or expense. See General Commentary, 2 Vernon's Texas Rules, Annotated 146. The law does not condone such an unauthorized inspection when the inspection in all probability could have been obtained through lawful means by making application to the court for an inspection order pursuant to Rule 167, Tex.R.Civ.P.

Mr. Moore was no more than a trespasser on appellees' property at the time he made the unauthorized inspection, and the courts of this state will not admit testimony obtained through the back door when there is provided a lawful method of entry through the front door.

Furthermore, it was admitted in appellant's brief that the proposed testimony of Mr. Moore would have been cumulative to that of appellant's witnesses Lacy and Stone.

Day & Zimmermann, Inc.'s, third and fourth points of error complain of the trial court's failure to instruct a verdict in its favor and failure to grant its motion for judgment non obstante veredicto, respectively. Appellant contends there was no evidence showing that it was guilty of any negligence in burning the powder which exploded on August 14, 1968, and that no evidence was introduced to support the findings of the jury to special issues numbered 6 through 10, wherein Day & Zimmermann, Inc., was found guilty of negligence which was the proximate cause of the damage to the appellees' house.

■ In considering the "no evidence" points, the evidence must be viewed in the light most favorable to the verdict and disregard that which is opposed or contrary to it. Stafford v. Thornton, 420 S.W.2d 153 (Tex.Civ.App. Amarillo 1967, writ ref'd, n. r. e.).

The evidence shows that composition B material is frequently burned, rather than detonated. However, if the material is more than three inches in diameter it is detonated in a hole covered with dirt. According to the testimony of appellant's employee Jack L. Wright, burning ground superintendent, the material in question was forwarded to the disposal area with a tag showing that it was to be detonated. However, the materials were placed on a burning bed above ground and ignited and thereafter exploded. Appellee Clifton Strickland testified that, "It was a terrific explosion, made a terrible racket." He further stated that the explosion "felt like it just picked the bed up and just slammed it back to the floor." Mrs. Roy M. Fomby, whose house was damaged, testified that, "It was a bad explosion," and that the explosion was different from the routine explosion that she normally heard. Several houses in the Strickland neighborhood were found to be damaged following the explosion. Appellee Strickland had recently painted his house and did not see any cracks in the brick walls of his dwelling prior to the detonation in question. The cracks and damage to appellees' house were found shortly after the explosion on August 14, 1968. There was testimony that water wells in the vicinity became muddy immediately following the detonation. Donald T. Bailey, a witness for appellant, testified that wind direction and cloud cover are important factors in the amount of damage that can be caused by an explosion. There was testimony that a cloud cover existed on the night of the explosion, and that sometimes an atmospheric inversion accompanies a cloud cover. Further, that if an atmospheric inversion exists, it will intensify the shock wave from

the explosion and occasionally the shock wave frequency will be the same as the resonant frequency of a dwelling. When this occurs, the residence will sustain a greater vibration and the damage to the house will be increased. While there was no direct testimony that such an inversion existed on this occasion, or that the shock wave was of the same resonant frequency as that of the house, there was testimony that appellant Day & Zimmermann, Inc., had failed to check the atmospheric conditions prior to the burning of the composition B material on this particular night. Mr. Bailey further testified that the conditions were less than ideal for burning the explosive material on the night in question.

Robert Lacy, another of appellant's witnesses, testified that it would be strange for a five-year old house that had no cracks or damage to it, to suddenly, overnight, have cracks and damage.

Jack L. Wright testified that "standard operating procedure" required that no more than 81 pounds of comp. B be detonated at one time.

Witnesses Bailey and Wayne O. Ursenbach agreed that if an explosion caused damage outside the Lone Star Ordnance Plant it would be from an unreasonable, excessive charge, or "a lot bigger charge than was safe to be used at that time."

In answer to special issues Nos. 6 and 7, the jury found that Day & Zimmermann, Inc., ignited an excessive quantity of explosive material on its burning pad on August 14, 1968, and that this act was a proximate cause of the damage to the Strickland house.

In answer to special issues Nos. 8, 9, and 10, the jury found that Day & Zimmermann, Inc., failed to ascertain that proper atmospheric conditions existed for the detonation of the explosive material on the night of August 14, 1968; and that such act was negligence, and was the proximate cause of the damage to the Strickland house.

It is now well settled that the Texas courts have rejected the doctrine of absolute liability espoused by Rylands v. Fletcher, 3 Law Rep. House of Lords 330, in explosion and blasting cases. Less well-settled is the rejection of the evidentiary rule concerning the doctrine of res ipsa loquitur in explosion and blasting cases.

In Kelly v. McKay, 149 Tex. 343, 233 S. W.2d 121 (1950), the Texas Supreme Court took the view that it was unnecessary for it to decide the applicability of the res ipsa loquitur doctrine, because there was some evidence offered by the plaintiffs which would reasonably sustain a judgment in their favor, without the aid of the rule of res ipsa loquitur, and, therefore, the trial court had erroneously instructed a verdict for the defendant in a caliche pit blasting case.

In Universal Atlas Cement Company v. Oswald, 138 Tex. 159, 157 S.W.2d 636 (Tex.Sup.1941), the court held that the doctrine of res ipsa loquitur was not applicable, although it is to be noted that the holding was made upon the ground that the plaintiff had gone further than alleging generally that the defendant set off the blast and that the damages proximately resulted therefrom, and had alleged specific acts of negligence. The court was of the opinion that, consequently, res ipsa loquitur was not in the case

While we see no good reason why the doctrine of res ipsa loquitur should not be applied in blasting and explosion cases, it is not necessary for us to decide that question in this case, because this suit was not tried on the theory that res ipsa loquitur applied, nor was the case tried on the theory of absolute liability.

■ The question here presented is whether there was any evidence presented to the jury from which they could conclude that Day & Zimmermann, Inc., had acted negligently in the disposal of 3,915 lbs. of composition B explosive material. Our re-

view of the voluminous record in this case leads us to believe there was evidence of negligence on the part of this appellant, and that the jury was justified in reaching its verdict. Day & Zimmermann, Inc., knew that composition B material was a dangerous substance, that on occasions it would detonate while in the process of burning, and that standard operating procedure required that no more than 81 pounds of the material be *detonated* at one time (then under soil cover). It also knew that if the atmospheric conditions were unfavorable the material would be more likely to detonate than if the wind were calm. Another known fact was that it was safer to detonate the material underground rather than on the surface, since detonation was always conducted with a soil cover over the explosive material. The rejection slip accompanying the material in question indicated that the material was to be detonated rather than burned. Appellant Day & Zimmermann, Inc., disregarded the rejection slip and proceeded to burn the material without checking the atmospheric conditions, when the wind was blowing and "under conditions less than ideal." While there was testimony that Day & Zimmermann, Inc., had followed the usual and customary procedure for *burning* the material and that 3,915 lbs. of the material was not an excessive amount to *burn* at one time, the jury chose to believe that appellant had acted negligently in burning the materials without checking the atmospheric conditions and that the amount which was ignited and subsequently exploded was excessive under the less than ideal conditions. Appellant offered no satisfactory explanation of why it failed to follow the instructions on the rejection slip, indicating that the material was to be *detonated* rather than burned, other than Jack Wright could make the final decision on whether to burn or detonate the waste ammunition material. Neither did appellant offer any satisfactory explanation of why it failed to check the atmospheric conditions when it knew that the material was more likely to detonate when the atmospheric conditions were

unfavorable and that the likelihood of damage to property outside the confines of the plant premises would be enhanced if the atmospheric conditions were unfavorable.

We believe there was testimony which might fairly be interpreted as indicating that the burning of 3,915 lbs. of composition B explosive material was, under the attendant circumstances, dangerous to and calculated to injure appellees' property. The evidence was such that the jury might well conclude that Day & Zimmermann, Inc., was negligent in *burning* the 3,915 lbs. of explosive material on the occasion in question, rather than *detonating* it in 81 pound lots under a soil cover in compliance with the terms of the rejection slip and standard operating procedure, or waiting until the conditions for the burning of the material were ideal. 20 A.L.R.2d 1372, 1394, 1399, 1400.

■ Our examination of the record leads us to the conclusion that evidence existed from which the jury could conclude that the blast of August 14, 1968, caused damage to appellees' house. The testimony shows that the house was in good condition just previous to the explosion, and that cracks were discovered in the house shortly following the explosion. Other houses in the neighborhood developed cracks following the detonation. The earth tremors attendant to the explosion were more intense than usual. Water wells in the vicinity that had previously been clear were muddy following the demolition. Lacy testified that it would be strange for a five-year old house that had no cracks or damage to it, to suddenly, overnight, have cracks and damage. In Weaver v. Benson, 152 Tex. 50, 254 S.W.2d 95 (1952), which was a suit for cracks in a wall allegedly caused by nearby blasting operations, the court stated through Justice Garwood:

"Doubtless the fact of even an atomic blast plus the bare fact that the crack exists is not evidence that the latter is due to the former, since obviously cracks

in walls occur more often than not for reasons other than blasts. But where there are additional circumstances in evidence tending to date the crack as coincident with the blast, the result may well be different. Surely if there were eyewitness testimony that the crack never existed before the blast and was noted for the first time the day after the blast, the degree of force of the blast—its ability to have caused the crack—would be at least a circumstance to fortify or weaken the inference from the date of origin that the crack was caused by the blast . . . . In blast-damage cases, the fact that causation is so often impossible of proof, except through circumstantial evidence, justifies a rather liberal attitude in judging the relevance of a particular circumstance."

The jury found that an excessive amount of explosive material was detonated on this occasion and there is ample evidence to sustain the finding. We therefore believe that the testimony relative to the attendant circumstances of the terrific explosion and cracks being found in appellees' house shortly following the explosion, which were not there before the explosion, constituted sufficient evidence from which the jury could conclude that the blast was the cause of the damage to the house owned by appellee. Weaver v. Benson, supra; Kelly v. McKay, supra; Universal Atlas Cement Company v. Oswald, supra; Stafford v. Thornton, supra; and Pelphrey v. Diver, 348 S.W.2d 453 (Tex.Civ.App. Austin 1961, writ ref'd, n. r. e.). Points of error 3 and 4 of appellant Day & Zimmermann, Inc., are overruled.

It is an understatement to say that each of the issues presented in this case was hotly contested. The case was well developed by both sides and the jury chose to believe the testimony elicited by appellees and the evidence they presented rather than the opinions of the experts produced by appellant Day & Zimmermann, Inc.

When all the evidence is considered, we are of the opinion there was sufficient evidence to support the jury finding appellant Day & Zimmermann, Inc., was negligent in igniting an excessive amount of explosives and that such negligence was a proximate cause of the damages to appellees' house.

We have examined the other points of error presented by Day & Zimmermann, Inc., and find them without merit in view of what we have already said. Appellant strongly urges that the damage to appellees' house, or at least some of the damage, resulted from settling, cracking, bulging, shrinkage or expansion of foundations, walls, floors, ceilings, roof structures, walks or drives that did not result from the explosion. Suffice it to say that if the house were calculated to stand indefinitely, though held together by a single strand of silk, and appellant negligently caused the house to fall apart by initiating an excessive blast, it would not mitigate the damages if the strand failed to hold. The question is whether the damage that was caused was initiated by the negligence of the appellant. The jury concluded, and we hold that the evidence was adequate to sustain the verdict, that the house was in good condition prior to the blast, and that whatever damage was caused was the result of the negligent intensive explosion of August 14, 1968. We further hold that the trial court properly charged the jury and correctly overruled appellant's objections to the charge. Finding no error in the actions of the trial court and the findings of the jury, we respectfully overrule the remainder of the points of error presented by appellant Day & Zimmermann, Inc. We further overrule the points of error presented by appellant, Phoenix Insurance Company. The judgment entered by the trial court is accordingly affirmed and the costs are taxed against Day & Zimmermann, Inc.

DAVIS, J., not participating.