STATE of Texas, Appellant,

v.

Chuck TAYLOR, et al., Appellees.

No. 12–85–0074–CV.

Court of Appeals of Texas,
Tyler.

Nov. 26, 1986.

Rehearing Denied Dec. 23, 1986.

Elliott Mitchell, Asst. Atty. Gen., Austin, for appellant.

Edward Vassallo, Dallas, for appellees.

COLLEY, Justice.

This is a condemnation case. On October 27, 1981, the State filed its original petition for condemnation against Chuck Taylor, Etta Taylor Booher, and Ethel Jane Wiser, a lienholder, seeking to acquire the fee title to 23.7 acres situated on the T.W. Ritter Survey in Kaufman County.[1] On December 16, 1981, the special commissioners appointed by the Judge of the 86th Judicial District Court awarded Taylor and Booher (hereafter Taylor) $66,586 as damages for the taking. Taylor timely filed objections to the award. On September 27, 1984, the State filed its first amended pleading naming as parties defendant (lienholders) the beneficiaries under the last will and testament of Ethel Jane Wiser, deceased.

The case went to trial before a jury.[2] Based on the verdict, the trial court signed the judgment in favor of Taylor in the net amount of $176,818.[3]

The State seeks reversal of the judgment and a remand of the cause for a new trial. We affirm.

The State briefs nine points of error. By its first point, the State contends the court erred in refusing to permit the filing of a trial amendment enlarging the area of access[4] allowed Taylor from the south remainder to and from the condemned area and a public two-lane access or service (frontage) road leading through the condemned area to FM Road 740 located some 1,500 feet from the area of access provided. The 23.7-acre tract of land taken for highway purposes bisects a 106-acre tract owned by Taylor located on the Ritter Survey, leaving a 30.6 acre remainder tract on the north, and a 52 acre remainder tract on the south.[5] Before the taking, the 106 acres adjoined a public road (Wiser Road) for some 1040 feet on its north side. After the taking, the north remainder retained the same access to Wiser road, but the south remainder of 52 acres was cut off from direct access thereto. The first amended petition for condemnation filed by the State, and upon which it went to trial, reserved to Taylor the right of access over and across the condemned lands from the south remainder, but not the north remainder, in the following language, to wit:

> Access will be permitted to the south remainder abutting the highway facility between a point being the beginning of the fourth call and a point being North 79° 40′ 41″ West 70 feet from the beginning of the fourth call of the foregoing field note description.

---

1. All oil, gas, and sulphur underlying the lands are excepted, but the landowner was left with no exploration or drilling rights respecting the surface of the 23.7-acre tract of land. The lands were condemned to provide a right of way for a controlled access highway as authorized by Tex.Rev.Civ.Stat.Ann. art. 6674w–1 (Vernon 1977). All references to articles are to Tex.Rev.Civ.Stat.Ann. unless otherwise noted.

2. The date of taking was stipulated to be January 28, 1982.

3. The jury found damages in the total sum of $243,404 from which the award of the special commissioners in the amount of $66,586 (drawn down by Taylor) was deducted.

4. The amendment stated *inter alia,*

> Access will be permitted to the south remainder abutting the highway facility the full distance of the fourth call of the foregoing field note description, being a total distance of 140.80 feet.
> Access will be denied to the south remainder abutting the highway facility from the beginning of the fifth call and extending to the end of the sixth call of the foregoing field note description. Access will be denied to the north remainder abutting the highway facility.

5. See Appendix "A."

Access will be denied to the south remainder abutting the highway facility from a point being North 79° 40' 41" West 70 feet from the beginning of the fourth call and extending to the end of the sixth call of the foregoing field note description. Access will be denied to the north remainder abutting the highway facility.

The attached Appendices "A" and "B" demonstrate the relationship between the remainders and the access road as well as the area of access from the south remainder to the condemned strip.

It is true, as the State contends, that a condemnor has "the right to dismiss as to a portion of the lands when it decides that its purpose may be accomplished with less land than was initially sought." (Citations omitted.) *Thompson v. Janes*, 151 Tex. 495, 251 S.W.2d 953, 954–955 (1952). However, it is also well established that the condemnor's right to reduce the character, nature or extent of the title condemned cannot be exercised to the prejudice of the landowner. *Thompson v. James*, 251 S.W.2d at 955; *Texas Power & Light Co. v. Cole*, 158 Tex. 495, 313 S.W.2d 524, 530–531 (1958). Here, the tendered amendment to the State's petition for condemnation, if allowed, would have granted Taylor and the public, the right of ingress and egress over and across a portion of the condemned right of way measuring 140.8 feet in width instead of 70 feet in width in order to reach the service or access road running to FM 740. As demonstrated by the Appendices,

the south right of way line of the access road abuts the north boundary line of the south remainder.[6] Under the evidence before us, Taylor, in order to accommodate vehicular traffic, would have to construct a suitable drive connecting the south remainder and the access road which dead ends 70 feet west of the northeast corner of the south remainder. It is undisputed that, absent the access afforded the south remainder by the State's first amended pleading, such tract, after the take, would have been landlocked, a condition calculated to destroy its value. The value witnesses for the State and Taylor testified that the value of the south remainder was reduced[7] by the taking even with the 70 foot access provided by the State's first amended petition for condemnation. The issue raised by the first point is not whether the State was entitled to relinquish its right to exclusive possession of the condemned right of way along the additional 70 feet abutting the access road. *Texas Power & Light Co. v. Cole* settles that question. The real issue is whether the trial court abused its discretion in not permitting the filing of the trial amendment at the time[8] it was tendered.

 Our Supreme Court has stated that amendments of pleadings in condemnation cases pending in the courts are governed by the appropriate Texas Rule of Civil Procedure.[9] *State v. Nelson*, 160 Tex. 515, 334 S.W.2d 788, 790 (1960). We agree with the State that the provisions of Rule 63[10] must be considered in our review of

---

6. See defendant's Exhibits 2 through 10 (photographs).

7. The mean value before the take of the State's value witnesses was $1,350 per acre; whereas, the mean value of Taylor's witnesses was $3,750 per acre. The State's witnesses testified to a mean reduction in value by reason of the taking of roughly twenty-five percent. Taylor's witnesses related a mean reduction in value after the take of eighty-one percent. The testimony reveals that the limited access to the south remainder produced the greater part of the loss in value occasioned by the taking.

8. The State offered the trial amendment after Taylor had rested his case-in-chief. (Although Taylor is a designated defendant in the trial, he was, in fact, the party bearing the burden of

proof on the remaining disputed fact issues in the case and was therefore in the attitude of a plaintiff.) *Texas Power & Light Co. v. Cole*, supra.

9. All references to rules are to the Texas Rules of Civil Procedure unless otherwise noted.

10. Reading: "Parties may amend their pleadings, file suggestions of death and make representative parties, and file such other pleas as they may desire by filing such pleas with the clerk at such time as not to operate as a surprise to the opposite party, provided, that any amendment offered for filing within seven days of the date of trial or thereafter, or after such time as may be ordered by the judge under Rule 166, shall be filed only after leave of the judge is

the trial judge's action refusing to permit the filing of the trial amendment. On appeal, the burden rests with the State to demonstrate that the judge's action amounted to an abuse of his judicial discretion. *Hardin v. Hardin,* 597 S.W.2d 347, 349 (Tex.1980). When the amendment was offered Taylor objected to its tardy filing, pointing out that he had rested his case-in-chief; that the date of the take was January 28, 1982 (some thirty-three months before the trial date); and that Taylor during the pendency of the case had no "inkling" of the State's intention to grant the additional 70 foot of access adjoining the access road. The State argues that the amendment was offered to enlarge the useable [11] access from the south remainder to the access road so as to reduce Taylor's damages to that tract. The State contends that "it is hardly possible ... to think that [Taylor] could have been surprised by the amendment ... considering that [Taylor] had been aware for over 3 years of the State's intention to grant access from [the] south remainder." The flaw in that argument is that since the initiation of the proceeding in 1981, the State's pleadings only permitted the 70 foot wide access. Additionally, although Taylor could not contest the right of the State to condemn the property,[12] he was certainly entitled to presume during the pendency of the action that the State Highway Commission had not authorized [13] access in addition to the original 70 feet. The record before the trial judge was that Taylor had rested; his value witnesses had rendered their opinions as to damages based on the 70 foot access of which only 20 to 25 feet [14] was useable for vehicular traffic because the remainder of the 70 feet

was located in a creek. Both value witnesses testified that the major cause of the reduction in value of the south remainder after the taking was the small area of actual physical access provided. The State, in its claim that the trial court abused its discretion attaches significance to the fact that Taylor's value witnesses were well prepared to testify concerning the monetary effect of impaired or limited access to public roads from the south remainder. So, argues the State, the trial amendment would have provided a greater area of access to the formerly "landlocked" south remainder thereby reducing the amount of Taylor's damages. The State also contends that Taylor could not be "surprised by the amendment" because Taylor "had been aware for over three years of the State's intention to grant access from [the] south remainder." The argument is unsound. While the State had a substantive law right to amend its petition for condemnation in order to relinquish title or rights originally sought, that right is not unbounded. *Hardin v. Hardin,* 597 S.W.2d at 349. The assertion of the right is limited by the application of Rule 63. As amply demonstrated by the record, the State had been aware for almost three years before trial that unless an adequate access was provided to the public roads located near the south remainder, such tract would be absolutely "landlocked," a condition which would virtually destroy its value for *all* purposes. Therefore, the State Highway and Public Transportation Commission as authorized by statute,[15] initially provided the 70 foot access apparently on the advice of the engineering and right-of-way personnel of the State Department of Highways

obtained, which leave shall be granted by the judge unless there is a showing that such amendment will operate as a surprise of the opposite party."

**11.** The evidence conclusively shows that only 25 feet of the original 70 foot access permitted by the State's first amended petition was useable or suitable for vehicular traffic.

**12.** Taylor drew down the award of the special commissioners. *See State v. Jackson,* 388 S.W.2d 924, 925–926 (Tex.1965).

**13.** See art. 6674w–1 (Vernon 1977).

**14.** According to the testimony of Fred M. Simmons and Samuel Thomas Worthington, Jr., employees of the State Department of Highways and Public Transportation.

**15.** *See* Tex.Rev.Civ.Stat.Ann. art. 6674w–1, 2(a), (f) (infra note 18).

and Public Transportation. Since the State went to trial on its first amended petition, it was quite reasonable for Taylor to conclude that the Highway Commission had taken no action to modify the extent of the access permitted. The record does not reveal whether the Commission did in fact exercise its authority under the statute to enlarge the access.[16] If prior to trial, the Commission did in fact modify its original order to provide the 140 foot access from the south remainder, the assistant attorney general in charge of the matter had a duty to cause an amendment to be timely filed reflecting the change, or to at least notify Taylor of the change. His failure to do so shows a want of diligence on the State's part which deprived Taylor of notice of the nature and extent of the taking upon which his right to damages rested. *See Coastal Indus. Water v. Celanese Corp.*, 592 S.W.2d 597, 601 (Tex.1979). The State asserts that the late offer of the amendment would only inconvenience Taylor, implying, we suppose, that Taylor's value witnesses could be recalled to offer revised opinions as to the amount of damages to the south remainder, taking into account the 140–foot access area provided by the trial amend-

ment. Such a contention is insupportable under our adversarial process of resolving disputes regarding damage issues in emminent domain cases. Common sense and reason inform us that value witnesses spend many hours investigating comparable sales and viewing the property involved in the case. If the trial judge had permitted the late filing of the amendment, a postponement of the trial would have been necessary in order to allow the value witnesses an opportunity to re-inspect the property, re-think their appraisals, and perhaps revise their opinions as to Taylor's damages. Under these circumstances the credibility and effectiveness of the witnesses would be impaired. Based on the record before the trial judge, we conclude that he could have reasonably determined that Taylor was surprised by the tender of the amendment which, if permitted, would have prejudiced Taylor's case before the jury. Consequently, we hold that the trial judge did not abuse his discretion in refusing to permit the filing of the trial amendment.[17] *Hardin v. Hardin*, 597 S.W.2d at 349–350. State's first point of error is overruled.

16. Even though Taylor, having drawn down the award could not challenge the legality of the taking or the authority of the Attorney General to file pleadings enlarging the access permitted, Taylor certainly was entitled to presume up to the very time the amendment was offered that the State Highway Commission had not authorized the change.

17. We note that *Southwestern Bell Telephone Co. v. West*, 417 S.W.2d 297 (Tex.Civ.App.—Tyler 1967, writ ref'd n.r.e.), and *State v. Frost*, 456 S.W.2d 245 (Tex.Civ.App.—Houston [14th Dist.] 1970, writ ref'd n.r.e.), are inapposite. In *West*, a written statement was filed by Bell *a year prior to trial*, entitled "Statement of Plaintiff." Under its terms the landowner was granted a dominent right to lay and construct across Bell's easement "railroad spur tracks, roads or drainage structures." West objected to the award, and at trial objected to Bell's cross-examination of West's value witness inquiring whether the damages would be reduced "if [West] had the right to place railroad spur tracks, roads, streets ... and drainage structures" on the easement area. This objection was apparently sustained. The next day of trial, Bell offered its amended pleading incorporating the earlier "statement of plaintiff" and a relinquishment of all rights of ingress and egress over West's lands located

outside the easement area. Judge Dunagan, writing for this court, concluded that the trial judge's refusal to allow the amendment "permitted the jury to ... assess the damages ... without the benefit of [proper instruction regarding the dominent uses of the easement area granted West by the amendment]." Judge Dunagan then observed that if the amendment had been permitted then the damages testified to by West's value witnesses resulting from the remainder being "cut off" from the railroad right of way which constituted the south boundary line of West's entire tract would have become nonexistent. While we agree with the result in *West*, we do not agree with all the rationale found in that opinion. But in any event, we are persuaded that *West* is distinguishable on its facts from the instant case.

In *Frost v. State*, the trial judge refused to allow trial amendment drafted to clarify earlier pleadings more general in character but both granting the landowner access to a controlled access highway to be constructed on and incorporating an existing highway upon which Frost's property abutted at the time of the take. That case is likewise easily distinguishable on its facts.

By its points two and three, the State challenges certain general instruction given the jury. By its second point the State alleges that the instruction "constituted an impermissible comment on the weight of the evidence." The third point asserts that the instruction "invited the jury to award damages for denial of access ... [to the controlled access highway (I–20)] to which [Taylor] had no legal right and for which [he was] not entitled to be paid." The instruction complained of read in pertinent part as follows:

Access will be permitted to the south remainder abutting the highway facility between a point being the beginning of the fourth call and a point being North 79 degrees 40′ 41″ West 70 feet from the beginning of the fourth call of the field note description.

Access will be denied to the south remainder abutting the highway facility from a point being North 79 degrees 40′ 41″ West 70 feet from the beginning of the fourth call and extending to the end of the sixth call of the field note description. Access will be denied to the north remainder abutting the highway facility.

■ The State correctly argues that article 6674w–1 provides that owners of real property abutting a controlled access highway are not entitled, as a matter of right, to access from their property to a controlled access highway, and likewise are not entitled to damages when the taking denies such access. See article 6674w–1.[18] The State contends, therefore, that the instruction complained of "made it appear that [the State] was taking (denying) access, where in fact it was not limiting access ... it was creating more." This argument is unsound. The instruction given is not susceptible to the construction placed on it by the State. The instruction plainly states that access to the condemned right-of-way strip to and from the north remainder is denied, and that access to and from

18. 2. Control of Access. The State Highway Commission, by proper order entered in its minutes, is hereby authorized and empowered:

(a). To designate any existing or proposed State Highway, of the Designated State Highway System, or any part thereof, as a Controlled Access Highway;

(b). To deny access to or from any State Highway, presently or hereafter designated as such, whether existing, presently being constructed, or hereafter constructed, which may be hereafter duly designated as a Controlled Access Highway, from or to any lands, public, or private, adjacent thereto, and from or to any streets, roads, alleys, highways or any other public or private ways intersecting any such Controlled Access Highway, except at specific points designated by the State Highway Commission; and to close any such public or private way at or near its point of intersection with any such Controlled Access Highway;

(c). To designate points upon any designated Controlled Access Highway, or any part of any such highway, at which access to or from such Controlled Access Highway shall be permitted, whether such Controlled Access Highway includes any existing State Highway or one hereafter constructed and so designated;

(d). To control, restrict, and determine the type and extent of access to be permitted at any such designated point of access;

(e). To erect appropriate protective devices to preserve the utility, integrity, and use of

such designated Controlled Access Highway; and,

(f). To modify or repeal any order entered pursuant to the powers herein granted.

Provided, however, that nothing in the foregoing subparagraphs (a) through (f), inclusive, shall be construed to alter the existing rights of any person to compensation for damages suffered as a result of the exercise of such powers by the State Highway Commission under the Constitution and laws of the State of Texas.

. . . .

Along new Controlled Access State Highway locations, abutting property owners shall not be entitled to access to such new Controlled Access State Highway locations as a matter of right, and any denial of such access shall not be deemed as grounds for special or exemplary damages, except where access to such new Controlled Access State Highway shall have been specifically authorized by the State Highway Commission to or from particular lands abutting upon such new Controlled Access State Highway in connection with the purchase or condemnation of lands or property rights from such abutting owners to be used in such new Controlled Access State Highway location, and the State Highway Commission thereafter denies access to or from such particular abutting lands to such State Highway at the point where such lands actually abut upon such State Highway.

. . . .

the south remainder is granted for a distance of 70 feet westerly from the northeast corner of the tract.[19] Oddly, the access area is not completely described. That is, Taylor is granted the right to enter the condemned area from the south remainder through a "70–foot gate" so to speak, but no other limitation on the scope (area) of his access rights are prescribed by the State's pleadings. Based on the evidence, one would assume that it was intended that Taylor's access to the right of way be limited to the boundaries of the access road itself which abuts the south remainder. However the location and dimensions of the access road were not established by field notes introduced into evidence, but rather by photographic and testimonial evidence as being a paved, two-lane road twenty-five feet wide with four foot shoulders on each side abutting the south remainder. The instruction given the jury quoted verbatim a portion of the State's first amended petition for condemnation.[20] The instruction was incomplete at best because the metes and bounds description of the 23.7–acre tract, which set forth the fourth, fifth, and sixth calls thereof, was not before the jury,[21] and also because the jury was not instructed that Taylor was not entitled to recover damages for denial of access from the remainder tracts *to the controlled access facility.* But, that part of the instruction informing the jury that access to the

condemned right of way from the south remainder was reserved in favor of Taylor for a distance of 70 feet was proper and benefitted the State. The State chose only to object[22] to the instruction rather than to object and request a different, or additional instruction based on article 6674w–1, 2. The State was required only to object to the instruction in order to preserve the claimed error for appellate review;[23] however, an objection must "specifically and clearly [point] out wherein ... the ... instruction ... is insufficient or is in error." *Yellow Cab & Baggage Co. v. Green,* 277 S.W.2d at 93. The objection does not meet this standard respecting either the claimed comment on the evidence or the contention that the instruction mislead the jury on the law by authorizing, contrary to article 6674w–1, 2, an award of damages for denial of access from the remainders to the controlled access right of way. Points two and three are overruled. Rule 274; *Yellow Cab & Baggage Co. v. Green, supra; Missouri Pacific Railroad Co. v. Kimbrell,* 160 Tex. 542, 334 S.W.2d 283, 285 (1960).

The State by points four through eight challenges the admissibility of the testimony of Taylor's value witnesses, Richard Tarpley and Raymond Kennedy, respecting five sales of property used by the witnesses to formulate their opinions on value, to wit:

> in which the field note description is available for their consideration and therefore they could be misled [sic] to the prejudice of the State in reference to calls 4 and 6 in the aforesaid instruction and that reason [sic] the State objects to this instruction as being manifestly misstatement [sic] of the issues in the case.

19. See Appendices "A" and "B."

20. *See* page 544 of this opinion.

21. As the trial judge noted.

22. In the following language, to-wit:
 The basis of the objection being that it constitutes a comment on the weight of the evidence and improperly suggests to the jury that access to both properties is denied and without specifying denied to what, [sic]. Mainly—Namely, [sic] the controlled access highway facility and there is no information given to the jury and there is no evidence in the record

23. *See Yellow Cab & Baggage Co. v. Green,* 154 Tex. 330, 277 S.W.2d 92, 93 (1955); *Moulton v. Alamo Ambulance Service, Inc.,* 414 S.W.2d 444, 449–450 (Tex.1967).

| DATE | SELLER | BUYER | AREA | PURCHASE PRICE | |
|------|--------|-------|------|----------------|--|
| 9–26–84 | Ben Young | Don Wooldridge | 74 acres | $ 5,370 | per ac. |
| 1–22–83 | J. E. Hamblin | Wm. J. Coe | 109 acres | 4,000 | ” ” |
| 7–__–84 | Walter L. Delock | Carl McKee | 100 acres | 10,000 | ” ” |
| 3–__–80 | James W. Pinson | Dalton-Vortex | 27 acres | 8,000 | ” ” |
| 8–__–83 | Dalton-Vortex | D. W. Morton | 27 acres | 18,000 | ” ” |

Tarpley testified to the first two sales. The Young to Wooldridge sale involved property located the same distance as Taylor's property from the town of Forney, and was likewise located near F.M. 740 on a ranch road. The tract, although subdivided into lots ranging in size from one-half acre to two and one-half acres, was sold by the acre rather than by lots. The State objected to the evidence of this sale urging that the sale was "too remote in time from the date of the taking. [w]e're comparing apples to oranges. Subdivisions to open acreage...."

The 109 acres sold by Hamblin to Coe was located on the west side, but within the city limits of Forney. The record shows that it was located on the north side of F.M. 548 and was improved with an unoccupied "old house" and a barn. No further details concerning the improvements were shown by Tarpley's testimony. The State objected to testimony of this sale "because it did have improvements on it."

We move now to the three sales testified to by Kennedy. The sale from Delock to McKee covered a 100–acre tract located east of Forney. It had frontage on F.M. 548, I–20 and U.S. 80, and direct access to F.M. 1641. The State objected to testimony concerning this sale because the sale was "too remote as to time." And, following further examination of the witness, which disclosed that the property had the road frontage as noted, the State made the further objection that the tract was not comparable "by reason of its location adjacent to or near three major thoroughfares and obviously commercial in nature as opposed to residential or agricultural."

The 27–acre tract, which was the subject of the Pinson to Dalton-Vortex sale, was located in the city of Forney, Texas, adjacent to old highway 80 and I–20. It was located between those two highways and had "some commercial use." The State objected to "this sale ... being a commercial piece of property ... and additionally object to it because it's within the city limits of Forney ... the fact it has frontage on at least two major highways." The same objections were made to the fifth sale, which was a resale of the same 27–acre tract some three years later.

Taylor's 106–acre tract is located on Wiser road, a graveled county road accessing F.M. 740. The tract is located in the western part of Kaufman County near the Dallas county line approximately two miles southwest of Forney, and two miles easterly from Mesquite as well as one-half mile from the town of Seagoville. According to Tarpley and Kennedy, Taylor's value witnesses, the highest and best use for which the tract was adaptable was rural homesites, i.e., small acreage subdivision for location of rural homesites. Tarpley placed a value of $4,000 on the 23.7–acre tract condemned and a like value for the remainder before the taking. Kennedy testified to a per-acre value, before the take, of $3,500 for all of the Taylor land. Each witness testified that every sale placed into evidence by him was utilized simply as an "indicater" of value to assist the formulation of his opinion as to the market value of the lands in question.

The Dallas Court of Appeals in 1960 delivered its opinion in *Hays v. State*, 342 S.W.2d 167 (writ ref'd n.r.e.). In this frequently cited and well-reasoned opinion, the Dallas court observed that testimony respecting sales of "comparable properties" may be received into evidence on direct examination of "expert ... witnesses as independent substantive evidence of the

value of the property [in question] ... or to give an account of the factual basis [of the expert's opinion as to value]." *Id.* at 170. The Dallas court cited *Stewart v. Commonwealth Dep't of Highways*, 1960 Ky., 337 S.W.2d 880, in support of these propositions.[24]

In the case before us, the details of the sales complained of by the State under these points of error were brought out on direct examination of Taylor's expert value witnesses. In *State v. Chavers*, 454 S.W.2d 395, 397 (Tex.1970), the Supreme Court clearly and emphatically held that when offered on direct examination, whether as substantive evidence or as factual data taken into account by an expert value witness in support of his opinion, details of a sale of property not reasonably similar to the properties in question are inadmissible. It may be noted, however, that Judge Reavley, writing for the court, was careful to point out that the holding in *Chavers* does not preclude an expert appraiser from taking "that type of transaction into consideration as part of his total view and [his] mental process [in reaching his opinion as to value of the property taken]." *Id.* at 397. In *City of Houston v. Pillot*, 73 S.W.2d 585, 591 (Tex.Civ.App.—Galveston 1934), *rev'd on other grounds*, 105 S.W.2d 870 (Tex.Comm'n App.1937, opinion adopted), the Court carefully wrote that "[t]he questions of the degree of similarity ... necessary ... to render testimony of sales of other property admissible in evidence, is not predetermined by any inflexible, hard and fast general rule, but must rest largely in the discretion of the [trial] judge, and the rules vary with the facts of the cases." (Citations omitted.) *See Hays v. State*, 342 S.W.2d at 171. Thus the ruling of the trial judge admitting the five sales into evidence will not be disturbed in this appeal unless it appears that he abused[25] his judicial discretion in permitting the details of the sales to be introduced before the jury. *Hays v. State, id.*

■ The pertinent facts testified to at trial showing the characteristics of Taylor's property and the properties involved in each of the disputed sales are undisputed. All of the facts relating thereto were testified to by Taylor's value witnesses. The 74–acre tract conveyed by Young to Wooldridge was quite similar in its location to the subject property, and the uses to which it was reasonably adaptable. Although the tract was subdivided, it was sold on a per-acre basis and, hence, the sale does not run afoul of the rule in *State v. Willy*, 360 S.W.2d 524 (Tex.1962), as contended by the State.

■ The Hamblin to Coe sale involved almost the same acreage as the Taylor tract, and was located on a farm-to-market road. The fact that it was improved with an old unoccupied house and barn does not render it unreasonably dissimilar to Taylor's property. Both sales occurred within three years of the taking. Therefore we are of the opinion that the trial court did not abuse its discretion in overruling the State's objections to these sales. Points four and five are overruled.

■ Far more serious questions are presented when we consider the three sales admitted through the testimony of Kennedy. Each of the properties bore many characteristics entirely dissimilar to Taylor's 106–acre tract. That is, specifically the location and accessibility of the three tracts to major highways and their adaptability to commercial and business uses as indicated by the evidence and the prices paid therefor, to wit: $10,000 per acre for the DeLock property, $8,000 per acre for the 27 acres from Pinson to Dalton-Vortex, and $18,000 per acre for the same 27–acre tract when sold by Dalton-Vortex to Morton. The undisputed evidence shows that each of these sales involves properties not reasonably similar to Taylor's property.

---

**24.** The *Stewart* court cited *Commonwealth v. Begley*, 1938, 272 Ky. 289, 114 S.W.2d 127. *See also* Nichols on Eminent Domain (3rd ed.) vol. 5 p. 278, § 21.3[1], [2].

**25.** A trial court "abuses its discretion when it fails or refuses to apply the law to conceded or undisputed facts." *Southland Life Ins. Co. v. Egan*, 126 Tex. 160, 86 S.W.2d 722, 723 (1935).

We conclude that the trial court abused its discretion in admitting the details of these sales into evidence. State's points six, seven, and eight are sustained; however, we also conclude that the errors, whether considered individually or collectively, do not rise to the level of reversible error. The jury found that Taylor's property before the take had a market value of only $3,500 per acre, dramatically less than the prices for which the last three sales mentioned brought. Therefore we are unable to conclude under this record that the evidence of these sales before the jury probably caused the rendition of an improper judgment. Tex.R.App.P. 81(b)(1); *State v. Chavers, supra; State v. Hamman,* 377 S.W.2d 727 (Tex.Civ.App.—Houston [1st Dist.] 1964, no writ).

■ Finally, the State contends in its ninth point of error that the court erred in permitting Raymond Kennedy to testify "to his appraisal of the ... property and damages ... [occasioned by the taking of Taylor's lands] because [his] appraisal was conclusively shown to have been performed for a fee at a time when [he] was not licensed as a real estate broker, in violation of the penal provisions of Article 6573a, Texas Revised Civil Statutes." Kennedy admitted on cross examination that he was not a licensed broker, whereupon the State voiced an objection to any further testimony of Kennedy on the basis of the statute referred to in the point of error. Later, after the jury was retired from the courtroom, the State requested the trial court to instruct the jury to disregard Kennedy's testimony. The court, in effect, and we believe correctly, overruled the objection and denied the request. The record reveals that Kennedy is an independent real estate appraiser with some nine or ten years' experience. He is a graduate of Texas Tech University, a senior appraiser and a member of the International Institute of Appraisers, and a member of the National Association of Appraisers. Kennedy had been manager of the land division of the Trinity River Authority bearing responsibility for acquisition of rights-of-way. He also had experience in making appraisals for banks, mortgage companies, condemning authorities and landowners. The State made no challenge to his credentials as an expert appraiser other than the attack made by the point addressed. The record reveals that Kennedy was well qualified to testify as an expert appraiser, and to render his opinion as to the market value of the lands in question, and any damages sustained by Taylor resulting from their taking.

Evidence illegally obtained is admissible in civil cases under the common-law rule. *See generally* 8 Wigmore, *Evidence* § 2184(a) (McNaughton ed. 1961). Texas Rules of Evidence 402 promulgated by our Texas Supreme Court, effective September 1, 1983, reads in part: "All relevant evidence is admissible, except as otherwise provided by Constitution, by statute, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority." The State does not contend that Kennedy's testimony is, in any respect, irrelevant; rather, it argues that the testimony was inadmissible under the holding in *Day & Zimmermann, Inc. v. Strickland,* 483 S.W.2d 541 (Tex.Civ.App.—Texarkana 1972, writ ref'd n.r.e.). There, an expert witness for the defendant made an unauthorized physical inspection of plaintiffs' home which plaintiffs claimed was damaged by an explosion occurring at defendant's plant site as a result of defendant's negligence. The expert was not permitted to testify "to anything he observed, or to any opinion he formed from what he observed, about the condition of ... [the] house" based on his inspection, apparently made without the consent of the plaintiffs or their counsel. The Texarkana Court concluded that the trial court "did not abuse its discretion in refusing to let [the witness] testify under the circumstances." The court explained its holding by observing that the witness had made a prior inspection in the presence of plaintiffs and their counsel, and that the defendant made no application pursuant to Rule 167 for an order authorizing a second inspection. Hence, the defendant "cannot now com-

plain of the court's refusal to let its witness testify [to facts gained by] the unauthorized inspection." In further explanation of its holding, the court said, "[t]he law does not condone ... an unauthorized inspection when the inspection in all probability could have been obtained through lawful means by making application [for court order under Rule 167]." *Id.* at 547.

We consider this holding in *Strickland* as resting upon the application of Rule 167, and the sound policy of encouraging discovery in accordance therewith. The court's *gratis dictum*, [26] we respectfully submit, is an incorrect statement of the Texas law.[27] At any rate, we conclude that *Strickland* is inapplicable to the case at hand.

 We know of no constitutional provision, statute, or rule, which alters the common-law rule, or limits the application of Rule 402. Article 6573a, contains both civil and penal sanctions,[28] but no provision prohibiting the introduction into evidence of the testimony of a fee appraiser based on an appraisal made by him at a time when he was not licensed under that statute. We hold that Kennedy's testimony was admissible in this case. Point nine is overruled.

The judgment is affirmed.

---

**26.** The court stated: "[The witness] was no more than a trespasser on appellees' property at the time he made the unauthorized inspection, and the courts of this state will not admit testimony obtained through the back door when there is provided a lawful method of entry through the front door."

**27.** Tex.R.Evid. 402; *Allison v. American Surety Company of New York,* 248 S.W. 829, 832 (Tex. Civ.App.—Galveston 1923, no writ); *McColl v. Hardin,* 70 S.W.2d 327 (Tex.Civ.App.—San Antonio 1934, no writ). *See also Sims v. Cosden Oil & Chemical Co.,* 663 S.W.2d 70, 73 (Tex.App.—Eastland 1983, no writ).

**28.** Tex.Rev.Civ.Stat.Ann. art. 6573a, § 19(a), (b), (c) (Vernon Supp.1986) provides, (a) that a natural person who violates the act "is guilty of a misdemeanor ... punishable by a fine of not less than $100 nor more than $500, or by imprisonment in the county jail for a term not to exceed one year, or both; [first offense]." Subsection (b) authorizes the recovery of civil penalties by a person "aggrieved" by violations of the act, and subsection (c) authorizes certain injunctive relief "to enforce compliance...."