CITY OF DALLAS, Appellant,

v.

James Luther ANDERSON et al., Appellees.

No. 19562.

Court of Civil Appeals of Texas, Dallas.

July 6, 1978.

Rehearing Denied Aug. 21, 1978.

Douglas H. Conner, III, Asst. City Atty., Dallas, for appellant.

Eddie D. Vassallo, Jr., McKool & Vassallo, Dallas, for appellees.

AKIN, Justice.

This is a condemnation case in which the city condemned a drainage easement across the landowners' property, and now appeals from an adverse jury award. The city appeals essentially on the grounds that the trial court erred in concluding as a matter of law that the landowner could not physically cross the easement and in refusing to admit into evidence certain "block-up sales" used by one of the city's experts in arriving at his opinion of the market value of the property. We hold that the trial court

erred in both respects. Accordingly, we reverse and remand.

The easement acquired by the city was, as set forth in the city's Statement in Condemnation, as follows:

An easement under, over and across [the owners' property] for the purpose of construction, operation and maintenance of storm-water drainage facilities.

The property is a 4.81 acre (213,675 square feet) rectangular tract which is now bisected through the middle by the city's drainage easement. Prior to the city's acquisition, the owners' land was zoned for residential uses only and was used as open pasture land from which no income was received. There is some evidence that the highest and best use of the property was for townhouse development. Some dispute in the testimony exists as to whether prior to the acquisition a creek or natural draw existed on the property where the city's easement now lies. The easement is about 25 feet wide at ground level with sloping earthen banks. At one end, the easement bottom is even with ground level. From there, the easement eventually runs to a depth of 3 or 4 feet at its deepest point.

The city on this appeal complains of certain rulings and the exclusion of certain evidence relating to proof of damage to the remainder of appellees' property due to the taking of the drainage easement across it. In particular, the city complains that the trial court wrongfully hampered its attempt to prove the amount of damage to that part of the owners' property called "Remainder C," the 117,518 square feet of land at the rear of the tract which is not served by any roads and which is separated from the more accessible front part of the property by the drainage easement.

■ We first address the city's points of error by which it complains of the trial court's refusal to submit the following requested instruction explaining the nature of the city's easement rights in the owners' land:

The term 'easement' as used in this charge is meant the right to use the 4,988 square feet or .114 acres of Defendant's property for drainage purposes and no other. Title to the property covered by the easement, and as well as the right to use, occupy the subject real property remains in Defendant, landowners, provided such use, occupancy and enjoyment of the subject 4,988 square feet of land or .114 acres does not interfere with the City of Dallas' drainage easement.

No explanatory instructions were given the jury, and we hold that this instruction should have been included in the charge. It is the court's duty to explain the extent of the easement taken and describe its incidents to the jury. *Texas Power & Light Company v. Cole,* 158 Tex. 495, 313 S.W.2d 524, 529 (1958). Moreover, the requested instructions substantially track the language of an instruction approved by this court as basic to the jury's understanding of condemnation cases where only an easement is taken. *See Texas Power & Light Company v. Lovinggood,* 389 S.W.2d 712, 714 -16 (Tex.Civ.App.—Dallas 1965, writ ref'd n. r. e.).

Furthermore, the failure to give this instruction probably caused the rendition of an improper judgment, because it likely caused the jury to improperly assess the damage to the remainder of the property. In this respect, during trial the judge had consistently ruled, in excluding testimony of the city's expert appraisers and limiting the city's scope of cross-examination, that, as a matter of law, the owners had no right to cross the easement by bridge or with utility lines to gain access to Remainder C. The judge apparently believed that this conclusion was warranted because the city's Statement of Condemnation described only the easement taken and did not specifically reserve any such rights of access over or under the easement to the owners. The refusal of the instruction in question was in keeping with these prior erroneous rulings of the trial judge.

In considering the damage to the remainder of the property, we must assume the jury acted in light of the law of the case as expressed by the judge during trial and as reinforced by the judge's failure to instruct

in such a way as to allow consideration of the owners' right to cross the easement. The jury's award of $33,761.65[1] was no doubt strongly influenced by the testimony of A. C. Moser, the owners' expert appraiser, who testified that Remainder C was damaged "one hundred percent," or to the extent of $29,378.56. Moser's damage calculations were expressly predicated on the lack of access to the rear of the property by virtue of the court's ruling that the owners had no right to cross the easement. The damage to Remainder C was by far the largest component of the damages by Moser's calculations, which were based on a per-acre value of more than twice that of the city's appraiser. The evidence of damage which the city was allowed to introduce suggests that the market value of the owners' entire 4.81 acres was less than $20,000. If the trial court's ruling that the owners had no access rights across the drainage easement was erroneous, then the corresponding failure to give an instruction which would have allowed the jury to consider those valuable rights in determining damage to the property was also not only erroneous, but probably caused the rendition of an improper judgment, and thus constitutes reversible error.

In fact, the trial court was incorrect in declaring as a matter of law that the owners had no right to cross the easement in any manner. The Statement of Condemnation describes that interest condemned by the city to be a storm-water drainage easement under, over and across the owners' property. Thus, the city could have gone into detail in describing the drainage facility to be built on the easement and in prescribing the city's rights vis a vis the owners relative to the crossing of the easement and the use of the land under and adjoining the easement, but it was not obliged so to do. Without a specific reservation of a right to cross the easement with a bridge or otherwise, we must look to Texas law to determine whether the trial judge was correct in categorically denying that the owners had such a right.

■ The property owner, as fee owner of the servient estate, including the land on which the city's easement lies, may use his land in any manner which does not interfere with the city's drainage easement. *San Jacinto Sand Co. v. Southwestern Bell Telephone Co.*, 426 S.W.2d 338, 345 (Tex. Civ.App.—Houston [14th Dist.] 1968, writ ref'd n. r. e.), *cert. denied*, 393 U.S. 1027, 89 S.Ct. 622, 21 L.Ed.2d 570 (1969); *Pokorny v. Yudin*, 188 S.W.2d 185, 195 (Tex.Civ.App.— El Paso 1945, no writ); *Texas-Louisiana Power Co. v. Webster*, 59 S.W.2d 902, 905 (Tex.Civ.App.—Dallas 1933), aff'd, 127 Tex. 126, 91 S.W.2d 302 (1936). We know of no Texas case which addresses specifically the right of a servient owner to bridge or cross a drainage easement. The authorities cited, however, do lead us to hold that the trial judge erroneously ruled that as a matter of law the owners could not cross the easement in any manner. It is a question of fact, rather than of law, whether a given crossing of an easement will interfere with the easement holder's enjoyment of his easement. The city's requested instruction is in accord with the law of this state and, in the context of the record before us, we must reverse and remand for the failure to give it. Indeed, this instruction on the relative rights of the parties seems to us to be the bare minimum to which the jury is entitled in a condemnation case such as this. *See Texas Power & Light Company v. Lovinggood*, 389 S.W.2d 712, 714–16 (Tex.Civ. App.—Dallas 1965, writ ref'd n. r. e.).

We now address the city's other points of error for the purpose of guiding the trial court on retrial. Most of these points also relate to the trial judge's erroneous conclusion that any physical crossing of the easement would, as a matter of law, interfere with the city's easement. Throughout the trial, the city attempted to elicit testimony from its own expert witnesses and from

---

1. Since we are remanding the case we note an error in the amount awarded in the judgment. Although the judgment did award the $33,-761.65 found by the jury to be the damage to the remainder, it failed to include the $1,147.24 found by the jury in answer to Special Issue No. 2 to be the value of the drainage easement taken.

those of the owners that the damage to Remainder C was minimal since the property owners could cross the easement with a bridge and any necessary utility lines in order to preserve the usefulness of the rear of the property. The trial court sustained objections to all such testimony on the ground of the erroneous substantive ruling discussed above. The excluded testimony is before us by way of bills of exception.

■ Much of this testimony actually consisted of, or was based upon, the conclusion that the owners had the legal right to cross the easement in a given manner. Such testimony was inadmissible as a legal conclusion unless admitted as an expert opinion. *Cockrell v. Craugh*, 338 S.W.2d 516, 523 (Tex.Civ.App.—Austin 1960, no writ); *Howard v. Sears*, 196 S.W.2d 105, 110 (Tex. Civ.App.—Amarillo 1946, writ ref'd n. r. e.). That evidence which should have been admitted was the testimony that a particular manner of crossing the drainage easement, such as with a bridge or gas, sewer or water lines, which would or would not interfere or be inconsistent with the city's use of their easement as described in the Statement in Condemnation. Also admissible, in our view, would be evidence of the feasibility or difficulty in crossing the easement in a non-interfering manner. Of course, counsel may argue the weight of all of such evidence before the jury. The jury's function, of which it should be informed by adequate instructions and definitions by the trial court, is to weigh the evidence on the possibility and feasibility of crossing the easement in a non-interfering manner as it bears on the accessibility of the rear of the property after the taking of the drainage easement. Accessibility is, of course, material to the jury's determination of the damage to the rear of the property.

■ Upon having much of its evidence of damage excluded for the reasons noted above, the city requested leave to file a trial amendment to its Statement in Condemnation by which the city "would permit" the property owners the right to cross over the easement, by bridge or otherwise, so long as they do not interfere with the city's use of the drainage easement. The trial judge denied leave to file this trial amendment and the city attacks that denial. The trial amendment should have been allowed. Even if the "would permit" language does confer a right, the amendment appears to give no right to the owners which the law, in the absence of such an amendment, does not already confer upon them as servient owners. Also, the allowance of this amendment would not prejudice the owners due to their possible reliance on the original statement. Moreover, the right of ingress and egress to the condemnee's remainder is a proper reservation by trial amendment. *State v. Frost*, 456 S.W.2d 245, 254–56 (Tex. Civ.App.—Houston [14th Dist.] 1970, writ ref'd n. r. e.). *See Wiseman v. State*, 406 S.W.2d 253, 255–56 (Tex.Civ.App.—San Antonio 1966, writ ref'd n. r. e.). We have some doubts, however, about the extent of the authority of a city attorney to limit the city by a trial amendment to a Statement in Condemnation previously authorized by the council. Although this particular trial amendment should have been allowed since it did not alter the property interest taken by the city, we express no opinion as to the extent of a city attorney's authority by way of trial amendment to add to, or subtract from, the property interests condemned by a city.

■ Lastly, we address the city's contention that the trial court erred in excluding expert testimony of certain comparable sales on the basis that such sales were "block up sales" and, therefore were not voluntary or sufficiently comparable to the land involved in the suit. The trial judge is given considerable discretion in deciding whether evidence of other sales meets the voluntariness and similarity requirements which are the predicate for admissibility. *State v. Childress*, 331 S.W.2d 230, 235 (Tex. Civ.App.—Eastland 1960, writ ref'd n. r. e.). The mere fact that individual sales are block up sales does not establish that such sales fail to satisfy these requirements. *City of Houston v. Wisnoski*, 460 S.W.2d 488, 492 (Tex.Civ.App.—Houston [14th Dist.] 1970, writ ref'd n. r. e.). In the absence of other evidence showing the dis-

similarity or involuntariness of the sales, they should have been admitted for the purpose of showing the basis of the expert's opinion of the value of the subject property. The better view is, of course, to permit a witness wide latitude in offering comparable sales which are the basis for his opinion of the value of the subject property. This is true because use of these "comparable" sales gives the jury a valuable measure of the competence of the witness' opinion. If a witness uses irrelevant or absurd sales to arrive at his opinion of market value, the jury is likely to give little weight to his opinion. On the other hand, if the trial judge excludes such a sale from evidence the jury is likely to give greater credibility to the expert's opinion than it deserves. Furthermore, the opposing party is likely denied a valuable tool to use on cross-examination and in jury argument to destroy the credibility of that witness' opinion. In our view, if the sale is a free and open market sale, it should be admitted into evidence except in that extraordinary instance where it is clearly evident to the judge that the admission of the sale is likely to lead to an erroneous jury verdict. In short, the better policy is for the trial judge to permit the circumstances of a sale to go to the weight of the evidence rather than to its admissibility.

Reversed and Remanded.

GUITTARD, C. J., not participating.