**CITY OF CORSICANA, Appellant,**

v.

**S.F. HEROD, et al., Appellees.**

**No. 10–87–134–CV.**

Court of Appeals of Texas, Waco.

Feb. 16, 1989.

R. Brent Cooper & J. Stephen Gibson, Cowles & Thompson, Kenneth C. Dippel, Hutchison, Price, Boyle & Brooks, Dallas (N. Alex Bickley of counsel, Dallas), for appellant.

Glenn A. Sodd, Thomas W. Gray & Ron Edmondson, Dawson & Sodd, Corsicana, R. Scott Moran, Burford & Ryburn, Dallas, for appellees.

## OPINION

THOMAS, Chief Justice.

The City of Corsicana, appellant, condemned the fee in a 3.1322–acre tract for the location of a "wet well" to pump water into its municipal water supply from the new Richland–Chambers Reservoir. To gain access to the pump site and as a right-of-way for its water pipelines, the city also condemned a 3.302–acre easement for a 4,800–foot long, 30–foot wide gravel roadway. The two parcels were contained in a 261–acre tract owned by appellees, S.F. and Gloria Herod, Eric and Joye Jones, Bill and Neva Haslbauer, and Barbara Woodward. The court entered a $2,316,314.50 judgment against the city for the interests taken and damage to the remainder.

The city contends errors occurred when the court refused two trial amendments, excluded the testimony of a witness, and admitted an exhibit into evidence over an objection that it had not been authenticated. Other points relate to jury argument, sufficiency of the evidence, and cumulative error. The judgment will be affirmed.

Several witnesses believed the pump facility and easement had destroyed the 261–acre tract's highest and best use as a security-restricted, "first-class" residential lakeside subdivision. The jury found the 261 acres and acreage covered by the easement was worth $15,000 an acre before condemnation, and set the pump site's pre-condemnation value at $37,500 an acre. The jury also found that after condemnation the easement tract was worth $1,500 an acre and the 255–acre remainder was worth $6,500 an acre. These findings were within the range of values given by the landowners' witnesses.

The first two points relate to the denial of two trial amendments. The city contends the amendments should have been allowed because they merely clarified the landowners' rights under the easement. However, the landowners list several reasons why the court acted properly: the amendments were promissory, pled the law rather than facts, expanded the condemnation, and prejudiced their case.

Rule 66 governs the granting or denial of a trial amendment:

If evidence is objected to at the trial on the ground that it is not within the issues made by the pleading, or if during the trial any defect, fault or omission in a pleading, either of form or substance, is called to the attention of the court, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the allowance of such amendment would prejudice him in maintaining his action or defense upon the merits. The court may grant a postponement to enable the objecting party to meet such evidence.

Tex.R.Civ.P. 66.

The city alleged in its first amended original petition that the interests were condemned "for the purpose of acquiring land for the construction, maintenance, and operation of a raw water intake site and pump station and a roadway and pipeline easement." Specifically, it alleged the easement was condemned "for the purpose of constructing, maintaining, and operating a thirty (30) foot gravel roadway, and ... water transmission pipelines under the [easement.]"

The crux of the landowners' case, particularly on damage to the remainder, was that the pump site and the gravel roadway had destroyed their property's highest and best use. Consequently, their witnesses gave an opinion, either on highest and best use, value of the interests taken, or damage to the remainder, based on the location of the pump site and the easement's location, use, and gravel surface.

Just before cross-examining the landowners' final witness, counsel for the city dictated the following into the statement of facts:

Comes now Plaintiff, City of Corsicana, and files this their Trial Amendment to grant the wording of said Trial Amendment to be as follows and amending Plaintiff's First Amended Petition in the following particulars: To quote, *'To grant [unto] the property owners of the*

*subject properties and their heirs'*—and I'm referring to the property owners within this lawsuit—*'the right to use Plaintiff's, City of Corsicana's 30–foot road and pipelines not inconsistent with its primary purpose, as a road and a pipeline easement.[']*

The purpose of this Trial Amendment is not for delay or for confusion but is to more clearly state the rights that are being taken under the roadway and pipeline easement as issued, and we believe will not further delay the trial of this case but *surrender certain rights back to the owners of the real estate.*

(Emphasis added).

After the landowners made numerous objections to the first amendment, the city requested a second:

Call it Plaintiff's Trial Amendment No. 2 seeking to amend Paragraph 27 of Plaintiff's First Amended Pleadings in the following particulars. Paragraph 27 states the following: Plaintiff further seeks to require an easement and right-of-way for the purpose of maintaining and operating a 30–foot gravel roadway and a water transmission line under the [easement].

\* \* \* \* \* \*

*We would ask that we be permitted to insert the words '30–foot public' before 'gravel roadway' and take out the word 'gravel' and just put 'a 30–foot public roadway'.*

(Emphasis added).

A confusing discussion then ensued between counsel, during which the city withdrew its request for the first amendment, and finally decided the second amendment would insert the word "public" in front of the words "gravel roadway," rather than adding the word "public" and deleting the word "gravel," as originally dictated. The city then re-offered the first amendment along with the second, but both were denied.

Rule 66, which is liberally construed, expressly urges a court to "freely" allow a trial amendment, if it will facilitate the presentation of the merits of the suit and the opposing party fails to satisfy the court that he will be prejudiced by its granting. Tex.R.Civ.P. 66; *Burroughs Corp. v. Farmers Dairies*, 538 S.W.2d 809, 810 (Tex.Civ.App.–El Paso 1976, writ ref'd n.r. e.). Each amendment will be examined separately to determine whether its granting would have facilitated the presentation of the merits and, if so, whether the landowners showed they would have been prejudiced by the amendment. The court's action will be reviewed for an abuse of discretion, keeping in mind that all the party opposing the amendment needs to show is "probable resulting prejudice." *See Vermillion v. Haynes*, 147 Tex. 359, 215 S.W. 2d 605, 609 (1948); *Westinghouse Electric Corp. v. Pierce*, 153 Tex. 527, 271 S.W.2d 422, 424 (1954).

■ The first amendment purported to "grant" the landowners the right to use the roadway in any manner "not inconsistent with its primary purpose, as a road and a pipeline easement." A condemning authority can amend its pleadings, if no prejudice results to the landowner, to abandon part of the rights it previously sought to condemn. *State v. Nelson*, 160 Tex. 515, 334 S.W.2d 788, 790 (1960). Evidently, the city believed the amendment would clarify the "rights being taken under the ... easement" and "surrender certain rights" back to the landowners. Would this amendment have "subserved" the presentation of the merits of the case?

The parties disagreed on whether the gravel roadway would have any practical use in the future development of the remainder. The landowners believed its location, narrow width, gravel surface, and the city's rights as the owner of the dominant estate made the easement useless and incompatible with a first-class, security-restricted residential development. Questions relating to its practical use were for the jury to resolve as fact issues. *See City of Dallas v. Anderson*, 570 S.W.2d 62, 65 (Tex.Civ.App.–Dallas 1978, writ ref'd n.r. e.). However, determining the extent of the landowners' legal right to use the easement and the city's legal right to exclude their use was a question of law for the

court to determine under the terms of the easement sought. *See White v. Natural Gas Pipeline Company of America,* 444 S.W.2d 298, 303 (Tex.1969).

An examination of the correlative rights of dominant and servient estates shows the first amendment would not have accomplished its stated purposes. A servient estate cannot interfere with the right of the dominant estate to use an easement for the purpose for which it was granted or sought. *Bickler v. Bickler,* 403 S.W.2d 354, 359 (Tex.1966). The servient estate can use a roadway easement in any manner not inconsistent with the dominant estate's reasonable enjoyment of the easement. *Ladies' Benev. Soc. v. Magnolia Cemetery Co.,* 288 S.W. 812, 815 (Tex.Comm'n App. 1926, holding approved). These rights and limitations exist by virtue of the law, and do not have to be expressed in the terms of the easement to be enjoyed or enforced. Thus, the landowners had the legal right to use the gravel roadway in any manner not inconsistent with the purpose for which it was condemned, regardless of whether the city's pleading expressly gave them that right.

Despite its so-called "grant," the first amendment would not have enlarged the landowners' rights nor limited the city's rights under the terms of the easement sought. It merely would have expressed a legal right already enjoyed by the landowners without expression: "the right to use Plaintiff's, City of Corsicana's 30–foot road and pipelines not inconsistent with its primary purpose, as a road and a pipeline easement."

The city compares the first amendment with the one improperly refused in *City of Dallas v. Anderson,* 570 S.W2d at 65. However, the facts and circumstances in *Anderson* are clearly distinguishable from those here. There, the City of Dallas condemned an easement "under, over and across [the owner's property] for the purpose of construction, operation and maintenance of storm-water drainage facilities." *Id.* at 64. Because the court erroneously believed the condemnees had no right to cross the easement in any manner, it consistently limited the city's cross-examination on damages, excluded testimony of the city's appraisers, and refused to instruct the jury on the nature of the city's easement rights. *Id.* at 64–65. Finally, the court refused to allow a trial amendment that "would permit" the condemnees to cross the easement "so long as they do not interfere with the city's use of the drainage easement." *Id.* at 66.

The appellate court in *Anderson* ruled the jury should have been instructed on the parties' rights to use the drainage easement. *Id.* at 64. With respect to the refusal of the trial amendment, the court stated:

The trial amendment should have been allowed. *Even if the "would permit" language does confer a right, the amendment appears to give no right to the owners which the law, in the absence of such an amendment, does not already confer upon them as servient owners.* Also, the allowance of this amendment would not prejudice the owners due to their possible reliance on the original statement [of condemnation]. Moreover, the right of ingress and egress to the condemnee's remainder is a proper reservation by trial amendment.

(Emphasis added). *Id.* at 65. Refusing to instruct the jury on the rights of the parties, coupled with the court's erroneous rulings based on an incorrect view of their legal rights, resulted in an improper judgment for damage to the remainder. *Id.*

The holdings in *Anderson* are understandable and correct under the circumstances of that case. The court's mistake of law interfered with the presentation of the condemnor's evidence, resulted in the refusal to instruct the jury on the parties' rights, and led to the denial of the trial amendment which would have cleared up the court's confusion. Clearly, the amendment would have facilitated the presentation of the merits because it would have corrected the court's mistaken legal opinion.

However, the record here does not reflect any misunderstanding by the court of the landowners' rights to use the gravel

roadway. In fact, the court correctly instructed the jury on the parties' rights:

In connection with this charge you are instructed that by the term "easement" is meant a superior right of one to use the property of another for the specific purpose set forth in the easement. In this instance, the easement is for the purpose of constructing, maintaining and operating a thirty (30) foot gravel roadway and water transmission pipelines. The landowners' property is servient to the dominant interests of the City, that is, the City has the superior right and the landowners may make no use of the property or construct any improvement thereon which would impair, inconvenience, or interfere with the City in its full use and enjoyment of the easement for the purposes for which it is taken.

You are instructed that in considering the uses to which the condemned property is to be subjected, you are to assume that the condemning authority will exercise its rights and use and enjoy the property taken to the fullest extent allowed by the law.

*See White,* 444 S.W.2d at 303. Furthermore, the city was not limited or hampered in the presentation of its evidence. The exclusion of incompetent testimony is discussed in the disposition of the third point.

The amendment in *Anderson,* like the one here, did not grant the condemnees any right they did not already enjoy under the law. However, this court does not interpret *Anderson* as requiring a court to grant every trial amendment which states the legal rights of the parties, regardless of whether it would facilitate the presentation of the merits of the suit.

The first trial amendment would not have facilitated the presentation of the merits because it would have done nothing more that state a right that did not require expression under the circumstances of the case. Accordingly, the court did not abuse its discretion when it refused to allow the city to file a useless and ineffective trial amendment. Point one is overruled.

The landowners could reasonably assume that questions of value and damage, the only issues to be tried, would be circumscribed by the petition's description of the interests being condemned and the stated purpose of their intended use. *See Westinghouse Electric Corp.,* 271 S.W.2d at 424. Consequently, they prepared their witnesses to state opinions based on the easement's having a gravel surface and being limited to the city's use for constructing, maintaining and operating the pump site.

Section 21.012 of the Property Code requires the condemning authority to state in the petition what use it intends to make of the property being condemned. Tex.Prop. Code Ann. § 21.012(b)(2) (Vernon 1984). The city stated in the petition that the "gravel roadway" would be used as an access to construct, maintain, and operate the pump site and as a right-of-way for its water pipelines. Obviously, the city had to have a way for its vehicles, employees and contractors to reach the pump site and a right-of-way for its pipelines. One cannot reasonably construe the city's stated purpose as including acquiring the easement to give the general public access to the pump site or to the lake.

As finally requested, the second amendment would have inserted the word "public" in front of the words "gravel roadway," rather than adding the word "public" and deleting the word "gravel," as it had been originally dictated. The city argues the amendment was necessary to "convey to the condemnees that the city condemned the easement only for the purpose of a water transmission pipeline and roadway ... to assure access to the [pump site]." This argument overlooks and underestimates the amendment's potential effect: it would have transformed the easement, originally condemned for the city's periodic use and for its limited purposes, into a public roadway that would have allowed the general public to use the landowners' property for access to the pump site and the lake.

The court was justified in denying the second amendment for several reasons. First, it would have expanded the taking by materially enlarging the limited purpose

for which the land was being condemned. *See Missouri, K. & T. Ry. Co. of Texas v. Anderson,* 36 Tex.Civ.App. 121, 81 S.W. 781, 785–86 (1904, writ ref'd) (holding land condemned for one purpose cannot be applied to another purpose). Second, it would have raised a new issue: what effect would the additional use of the easement by the general public have on damage to the remainder? A trial amendment should not be used to inject "entirely new subject matter" into a condemnation proceeding. *Nelson,* 334 S.W.2d at 792. Third, the amendment would have changed the factual basis of the suit and probably required the landowners to re-call some or all of their witnesses. A trial amendment that would require a factual "reshaping" of the case, with attendant delay, can be properly refused. *Westinghouse Electric Corp.,* 271 S.W.2d at 424. Furthermore, an amendment that would probably require the opposing party to re-open his case to present additional or new evidence can be refused. *Tuck v. Tuck,* 509 S.W.2d 656, 658 (Tex. Civ.App.–Austin 1974, writ ref'd n.r.e.).

The landowners objected to the second amendment because their witnesses, who had already testified, had based their opinions "on the current state of affairs regarding the road ... [and] on the existing pleadings." They pointed out that the amendment, if permitted, would undermine their testimony.

By waiting until all of the landowners' witnesses had testified before requesting the second amendment, the city placed the landowners and the court in circumstances substantially similar to those in *State v. Taylor,* 721 S.W.2d 541, 546 (Tex.App.–Tyler 1986, writ ref'd n.r.e.). There, the condemnee's witnesses had already testified on damages to the remainder, based on the owner's limited use of a 70–foot wide easement, when the condemning authority asked for a trial amendment that would have doubled the easement's width. *Id.* at 544. The following statement from *Taylor* is equally applicable here:

> Common sense and reason inform us that value witnesses spend many hours investigating comparable sales and viewing the property involved in the case. If the trial judge had permitted the late filing of the amendment, a postponement of the trial would have been necessary in order to allow the value witnesses an opportunity to re-inspect the property, re-think their appraisals, and perhaps revise their opinions as to Taylor's damages. Under these circumstances the credibility and effectiveness of the witnesses would be impaired. Based on the record before the trial judge, we conclude that he could have reasonably determined that Taylor was surprised by the tender of the amendment which, if permitted, would have prejudiced Taylor's case before the jury. Consequently, we hold that the trial judge did not abuse his discretion in refusing to permit the filing of the trial amendment.

*See id.* at 546.

The court could have reasonably concluded that granting the second amendment would result in an unreasonable delay of the trial and force the landowners to re-call some or all of their witnesses to offer revised opinions on damage. Consequently, the court did not abuse its discretion when it refused the second amendment because of probable prejudice to the landowners. *See id.* Point two is overruled.

The city called Thomas Hanes, an appraiser, as one of its witnesses. Hanes' direct testimony clearly shows, and he admitted on cross-examination, that he did not appraise the pump site or acreage covered by the easement as separate parcels. Instead, he set the value of the entire 261–acre tract at $12,000 an acre and then used that average per-acre value to determine the value of the two parcels before condemnation. He set the value of the easement acreage after condemnation at approximately 50 percent of its pre-condemnation value. The landowners tried to strike Hanes' testimony on the value of the pump site because he had not appraised it as a separate parcel, but the motion was refused.

Hanes then testified under cross-examination:

Q [Y]ou did an appraisal of the damage on the easement; is that right?

A Did I do an estimate on the market value of the easement? Right. Not necessarily the damage caused by the easement.

Q Okay. Your estimate on that was docked 50 percent in value from ... $12,000 an acre to $6,000 an acre; is that your testimony?

A That is correct.

\* \* \* \* \* \*

Q Do you understand that [the easement] is condemned as a gravel road?

A That's my understanding.

Q Do you understand that there are no rights reserved on the part of my clients with respect to the easement taking?

A That is not my understanding.

Q So, whatever testimony you gave about the easement was based on the understanding that my clients had some reserved rights with respect to that easement?

A That is correct.

Q What rights did you understand my clients had reserved?

A They can use it for a road, also.

Q You understand they can use it as a matter of right?

A Yes.

At this point the landowners made a motion to strike Hanes' testimony relating to the easement with the following result:

[LANDOWNERS' COUNSEL]: Your Honor, I move to strike the witness's testimony with regard to the easement because it's clearly based on an error of the understanding of the taking in this case.

[CITY'S COUNSEL]: If it please the Court, we would object to that for the reason that this is an easement and it's a roadway easement and there are no prohibitions from anybody using it or keeping from using.

There has been testimony by all the other witnesses here that the mere fact there is an easement here that is being used by other people does not destroy the security value of this total property.

After an off-the-record conference at the bench, the following transpired:

THE COURT: Okay. I'm going to sustain the objection and grant the motion with reference to the easement.

\* \* \* \* \* \*

[LANDOWNERS' COUNSEL]: Your Honor, may we ask that the jury be instructed the testimony pertaining to the easement.

THE COURT: The jury panel is so instructed.

The city complains about the exclusion of Hanes' testimony in point three.

■ A witness cannot use the average per-acre value of a larger tract to value a parcel condemned from the tract, unless the parcel contributes that same value to the whole. *State v. Meyer*, 403 S.W.2d 366, 375 (Tex.1966); *City of Richardson v. Smith*, 494 S.W.2d 933, 939 (Tex.Civ.App.–Dallas 1973, writ ref'd n.r.e.). An unauthorized use of that method of valuation deprives the condemnee of his property without full compensation. *Meyer*, 403 S.W.2d at 375. Therefore, the testimony of a witness who improperly values the part taken by using the uniform value of the larger tract can be excluded. *Id.* at 376.

■ Hanes' testimony on the value of the pump site and the before-and-after value of the easement acreage could have been excluded in its entirety because the evidence did not show the two parcels contributed the same average per-acre value to the 261 acres. *See id.* Moreover, the court could have stricken the testimony of Leon Hurse and Randy Denton, the city's other expert witnesses, who also admitted using the same prohibited method to value the pump site and easement tract. Although not excluded, their testimony lacked probative value. *See City of Richardson*, 494 S.W.2d at 939.

The city contends that, by excluding Hanes' testimony, the court implicitly and erroneously ruled that it had an exclusive right to use the easement. Why the court chose to exclude the testimony is not dis-

closed in the record. However, assuming the testimony was improperly excluded for the reason given by the city, the court nevertheless achieved the right result: Hanes' testimony lacked probative force and should have been entirely excluded because it was based on an improper method of valuation. A court should not be reversed for giving the wrong reason for an otherwise correct result. *See Gulf Land Co. v. Atlantic Refining Co.*, 134 Tex. 59, 131 S.W.2d 73, 84 (1939). Having achieved the right result, albeit for presumably the wrong reason, the court did not commit reversible error when it excluded Hanes' testimony. *See id.* Furthermore, the city could not have been harmed by the exclusion of Hanes' testimony which, if left before the jury, could not have supported a more favorable judgment. *See City of Richardson*, 494 S.W.2d at 939. Point three is overruled.

■ Bill Flowers, a consulting engineer who designed the wet well and intake structure for the city, described the project for the jury. He was asked on cross-examination whether he had stated in his deposition that the project was inconsistent with a "nice high-class subdivision." After Flowers questioned from the stand whether he had made that statement, the court excused the jury and heard objections and arguments about the admissibility of a document found in the file Flowers had produced at his deposition.

Flowers could not recall reading the document, did not believe his office had produced it, and denied the document was in his file when he made a presentation of the project during the council meeting at which the city made the legislative decision to acquire the property by condemnation. The jury returned and the landowners offered the unsigned document as Exhibit 58. Flowers reiterated that he could not recall specifically where the document came from, denied that it was his or his firm's work product, but assumed "it should be close to something in the arrangement of the file." The instrument immediately preceding the document in the file was on the letterhead of Flowers' firm. The city objected to the proposed exhibit because it had not been "properly proven," an objection the court overruled.

Exhibit 58 is an unsigned, typed document which describes the "SUBJECT PROPERTY" as belonging to the landowners, outlines the "CASE" as requiring the city to condemn 3.1592 acres for a raw water pump station and approximately 3.44 acres for a raw water pipeline, and identifies the "Aquilla Water Supply–Hill County" as a "[SIMILAR] INSTALLATION." The following statement appears under the heading "[E]FFECT OF THE PROPOSED INSTALLATION ON [THE LAND-OWNERS'] PROPERTY": "This installation will not be compatible to a first class lake sub-division."

The question under the fourth point is whether the court erred when it admitted Exhibit 58 into evidence over an objection that it had not been properly authenticated. The landowners argue the exhibit was sufficiently authenticated under Rule 901(b)(4) of the Texas Rules of Civil Evidence. *See* Tex.R.Civ.Evid. 901(b)(4). They claim the objection went to the exhibit's weight and not its admissibility, that the objection was too general to preserve error, and that any error would have been harmless.

The Texas Rules of Civil Evidence govern the admissibility and authentication of documentary evidence. Rule 901(a) requires a document to be authenticated before it can be admitted as evidence, and provides that "evidence sufficient to support a finding that the matter in question is what its proponent claims" satisfies the requirement of authentication. *Id.* at 901(a). Rule 901(b) contains a non-exclusive list of methods for authenticating or identifying evidence. *Id.* at 901(b).

When a document's authenticity is challenged, the court first determines preliminary questions about its admissibility. *Id.* at 104(a). If the preliminary proof "is enough to raise an issue of fact upon the [genuineness] of the document," then the court must admit it into evidence, and the jury determines what weight it should be given based on evidence from both sides. *See Beaumont Pasture Co. v. Preston &*

*Smith,* 65 Tex. 448, 451 (1886). A fact issue is raised if the preliminary proof establishes a "reasonable probability that the paper ... is what it purports to be." *Porter v. Rogers,* 293 S.W. 577, 579 (Tex.Civ. App.–Waco 1927, writ ref'd); *Barrera v. Duval County Ranch Co.,* 135 S.W.2d 518, 520 (Tex.Civ.App.–San Antonio 1939, writ ref'd).

Thus, the key question under the fourth point is whether the preliminary proof raised a fact issue on the genuineness of Exhibit 58. If so, then the exhibit was properly admitted and questions about its authenticity only affected its weight. *See Barrera,* 135 S.W.2d at 520.

Rule 901(b)(4) allows a document to be authenticated by "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken into conjunction with circumstances." Tex.R.Civ.Evid. 901(b)(4). The court did not have to blindly accept Flowers' testimony. Circumstances surrounding the document and its production were unusual enough that the court could have reasonably questioned Flowers' denial of any knowledge about its authorship or source. It was found in the file of the person who designed the project described in the document; its contents substantially matched the substance of Flowers' direct testimony describing the project; and the document had a distinctive characteristic which connected it to Flowers: he had designed the wet well and intake tower at Lake Aquilla in Hill County, and was uniquely qualified to compare the similarity of the two projects.

One cannot reasonably say such evidence totally failed to raise a fact issue on the document's authenticity under Rule 901(b)(4). *See id.* Consequently, the court properly admitted Exhibit 58 into evidence, and any lingering questions about its authenticity related only to its weight. *See Beaumont Pasture Co.,* 65 Tex. at 451; *Barrera,* 135 S.W.2d at 520.

■ However, assuming Exhibit 58 was erroneously admitted, the record shows the error was harmless. An error of law is harmless unless it probably results in an improper judgment. Tex.R.App.P. 81(b)(1).

Reversible error does not usually result from evidentiary rulings unless the whole case turns on the admission or exclusion of the evidence. *Turner v. Monsanto Co.,* 717 S.W.2d 378, 381 (Tex.App.–Houston [14th Dist.] 1986, writ ref'd n.r.e.).

The only harmful statement in the exhibit was that the project was incompatible with a first-class lake subdivision. Would the jury have answered the value and damage issues more favorably to the city if that statement had not been admitted? Because witnesses for the landowners had repeated the same allegation, the jury would have had to entirely reject their testimony on incompatibility and only believe the statement in Exhibit 58 for the whole case to have turned on the admission of the document. Such a proposition is incredulous under the record. Point four is overruled.

■ The city alleges under the fifth and sixth points that the court should have sustained its objections to comments by the landowners that the city could have selected alternate sites for the wet well and intake tower. The first comment was made during the landowners' opening statement:

[LANDOWNERS' COUNSEL]: We think the evidence is going to show you that off of this nice peninsula [owned by my clients] is some of the deepest water in the lake, and the City's witnesses are going to tell you that's why they picked ... my clients' property, to come out there and put their intake station because they wanted to get it deep in the lake. And that's the same reason that the City picked it as a site over other *alternate sites* that were available to them. They are going to admit there were other *alternatives* but because of the water being so deep—which is one of the same things that makes the tract so very valuable.

[CITY'S COUNSEL]: Your Honor, we would like to object to his comment with regard to alternate sites in connection with a motion previously made. We request that those remarks be stricken from the record.

THE COURT: I overrule the objection. (Emphasis added).

A complaint about an improper comment is waived unless an objection is timely made, and an objection is not timely unless it is made at the earliest practical moment. *See Miller v. Bock Laundry Machine Co.*, 568 S.W.2d 648, 653 (Tex.1977); *Halbert v. Upper Neches River Municipal Water Auth.*, 367 S.W.2d 879, 884 (Tex.Civ.App.–Houston 1963, writ ref'd n.r.e.). The objection was not timely made because the city allowed the first reference to alternate sites pass without an objection, and does not explain its delay. *See id.* This waived any error.

■ Furthermore, a complaint is waived unless a party distinctly points out the alleged error and states the grounds of his objection. *Davis v. Campbell*, 572 S.W.2d 660, 663 (Tex.1978). Referring the court to a "motion previously made," apparently for the grounds of the objection, was not sufficient. Holding otherwise would have placed the court in the untenable position of having to recall or locate and read an unidentified motion to obtain the grounds for the objection or risk error by ruling without making such an effort. Any error was waived by the general objection. *See id.*

■ The second reference allegedly occurred during the direct examination of Norman Jett by landowners' counsel:

Q  Is it reasonable to say that the only damage to this property is just right around here or just right next to the easement?

A  It's reasonable to say [the pump site] damages the entire property because the characteristics of ... what is built on the point [of the peninsula].

Q  Mr. Jett, would you say the same thing in damage? ... Would the damage be the same to *this property* if the pump station were *up here or up here*?

[CITY'S COUNSEL]: Your Honor, we object. The pump is not up there; and

he's going into a situation that does not exist.

\*     \*     \*     \*     \*     \*

THE COURT: I overrule the objection. (Emphasis added). Again, assuming the comments were improper, the city waived any complaint by not distinctly pointing out the perceived error and stating the grounds of its objection. *See id.*

■ Other reasons require the fifth and sixth points to be overruled. Assuming the court erroneously overruled the objections, the errors would have been harmless. *See* Tex.R.App.P. 81(b)(1). One cannot reasonably conclude that the city would have received a more favorable verdict if the comments had not been admitted. Finally, any error would have been subsequently cured by Bill Flowers, the city's witness, when he mentioned a study he did of alternate sites on the lake. Allowing similar evidence to be introduced without an objection waives any complaint about the prior introduction of the same evidence. *Walker v. Great Atlantic & Pacific Tea Co.*, 131 Tex. 57, 112 S.W.2d 170, 172 (1938). Points five and six are overruled for all of these reasons.

■ The jury found the easement acreage was worth $1,500 an acre after condemnation, and the 255–acre remainder to have an after-condemnation value of $6,250 an acre. The seventh and eighth points question whether these findings are supported by factually sufficient evidence.

Evidence from the landowners' witnesses, if their testimony was competent, was clearly sufficient to support both findings. However, the city alleges their testimony cannot be considered in an evidentiary review because it was incompetent under the decision in *Texas Electric Service Company v. Campbell*, 161 Tex. 77, 336 S.W.2d 742, 745 (1960) (holding testimony based on "mistaken ideas" of the condemnor's rights under a right-of-way easement was incompetent and constituted "no evidence" of value and damage). The city contends the landowners' witnesses misunderstood the parties' relative legal rights to use the easement, which rendered their testimony incompetent, and thus only evidence from

its witnesses can be considered in evaluating the evidence supporting the two findings.

Reference has already been made to the disagreement over what practical use the landowners could make of the easement. The landowners' position, reflected in their witnesses' testimony, was that the easement had no practical use, was incompatible with a security-controlled, first-class subdivision, and had damaged the remainder by destroying its highest and best use. Through cross-examination and the testimony of its witnesses, the city sought to portray the easement in a less damaging light, suggesting its compatibility and usefulness with a lakeside development.

Dick Tarpley, a real estate appraiser testifying for the landowners, valued the acreage covered by the easement at $1,400 an acre and the remainder at $5,550 an acre after condemnation. When asked on direct examination to explain what rights the city had condemned in the easement, he answered:

> That is an easement some 30 feet wide and 4800 feet long, nearly a mile long. The rights taken on that are *the majority of the bundle of rights that the [landowners have] in the property* ... [the petition] called for the right to take the easement to put a gravel road on it and to put water transmission lines on it.

(Emphasis added).

Later, Tarpley explained why he had valued the acreage covered by the easement at only $1,400 an acre after condemnation:

> *[The landowners] still retain a small ownership right in the [easement] property.* I frankly don't know exactly what it does in normal comparison to easements because *this [easement] is almost a blanket of the rights on the property. They still have the roadway which they could use with permission from the City.*

(Emphasis added).

Finally, he discussed the easement's potential effect on the development of the property as a subdivision:

> Well, I think it very definitely hinders and restricts lot placement, first thing.

*The property owner has no control over it. He has a right to put pastures on it; but the way I understand it, the road is for the benefit of the City, and they have control over it and for the property owners to use it they would have to have permission to use their own property.*

(Emphasis added).

These excerpts clearly show Tarpley's opinions were not based on the premise that the landowners did not have any rights to the property covered by the easement. Indeed, he correctly balanced the correlative rights between the dominant and servient estates, recognizing the city had the dominant or "majority" right of use and the landowners, as owners of the servient estate, subservient rights. He aptly described the city's predominant right as almost a "blanket of the rights on the property."

His comments about the landowners having to obtain permission to use the roadway can be reasonably construed as requiring the landowners to obtain the city's permission for any use that would be inconsistent with the purpose for which the easement was condemned. Points seven and eight are overruled because Tarpley's testimony, standing alone, is sufficient to support both jury findings.

Because of the disposition of the preceding eight points, the allegation of cumulative error in point nine is rejected, and the point is overruled without a discussion. The judgment is affirmed.

MEANS, J., not participating