**E.P. OPERATING COMPANY, Appellant,**

v.

**SONORA EXPLORATION CORPORATION,**
**Appellee.**

No. 01–92–01083–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 26, 1993.

Rehearing Denied Sept. 30, 1993.

---

**150**

Thomas M. Callan, Susan Laurea LaSalle, Dallas, Lynn C. Woods, Jr., Houston, for appellant.

Grant Kaiser, Houston, for appellee.

Before OLIVER–PARROTT, C.J., and MIRABAL and WILSON, JJ.

## OPINION

WILSON, Justice.

This is an appeal from a jury trial of an action to reform a bill of sale and assignment of interest in a well and a counterclaim for gas pipeline transportation fees. In six points of error the appellant, E.P. Operating Company (EPO), appeals from the trial court's entry of judgment in favor of the appellee, Sonora Exploration Company (Sonora). EPO contends the trial court erred in overruling its motion for judgment notwithstanding the verdict and motion for new trial, and in admitting certain evidence at trial. We affirm.

### Fact Summary

EPO assigned to Sonora its interest in the right to produce oil, gas, and other hydrocarbons from the State Tract 171, Well Number 2 in Matagorda Bay. EPO claims that after it executed and delivered the assignment to Sonora, it realized that a pipeline owned by Lone Star Gas Company (Lone Star) was inadvertently included in the assignment. EPO filed suit to reform the assignment to negate the inclusion of Lone Star's pipeline on the ground of mutual mistake.

Sonora's answer contended the pipeline was intended to be a part of the assignment and no mutual mistake had occurred. Sonora also filed counterclaims under the theories of sworn account, quantum meruit, implied contract, and unjust enrichment seeking payment of a transportation fee for the natural gas it claimed EPO transported through the pipeline. In addition, Sonora asserted a claim under the Texas Deceptive Trade Practices Act (DTPA), TEX.BUS. & COM.CODE ANN. § 17.41 (Vernon 1987), alleging EPO made misrepresentations to Sonora regarding the inclusion of the pipeline in the assignment.

The jury found the inclusion of the pipeline in the assignment was not the result of a mutual mistake; EPO had knowingly engaged in false, misleading, or deceptive acts or practices; and EPO had agreed to pay Sonora for the transportation of EPO's gas through the pipeline. The jury awarded Sonora $171,270 in damages for the reasonable value of transportation of the gas, $138,730 damages for EPO's knowing conduct, and $25,000 in attorney's fees. The trial court entered judgment based upon the jury's verdict.

In its first point of error, EPO contends the trial court erred in overruling EPO's motion for judgment notwithstanding

the verdict because Sonora's counterclaim under the DTPA was barred by the statute of limitations.

The sequence of relevant events is as follows:

August 19, 1986—the assignment and bill of sale was executed by EPO and delivered to Sonora.

March 20, 1989—EPO filed its original petition to reform the assignment.

April 17, 1989—Sonora filed its original answer and counterclaim for transportation fees (for EPO's transportation of its gas through the pipeline it assigned to Sonora).

March 13, 1991—Sonora filed its first amended answer and first amended counterclaim.

October 18, 1991—Sonora filed its second amended original answer and second amended counterclaim stating a claim under the DTPA (for representations made involving the assignment of the well from EPO to Sonora).

The statute of limitations for actions under the DTPA is two years. TEX.BUS. & COM. CODE ANN. § 17.565 (Vernon 1987). EPO contends that all of the false, misleading, or deceptive acts allegedly committed by it occurred more than two years before Sonora filed its claim under the DTPA.

Sonora responds that the date for filing its counterclaim under the DTPA was extended by TEX.CIV.PRAC. & REM.CODE ANN. §§ 16.069 and 16.068 (Vernon 1986). Section 16.069 provides:

(a) If a counterclaim or cross claim arises out of the same transaction or occurrence that is the basis of an action, a party to the action may file the counterclaim or cross claim even though as a separate action it would be barred by limitation on the date the party's answer is required.

(b) The counterclaim or cross claim must be filed not later than the 30th day after the date on which the party's answer is required.

TEX.CIV.PRAC. & REM.CODE ANN. § 16.069 (Vernon 1986).

Sonora filed its original counterclaim for transportation fees through the subject pipeline contemporaneously with its original answer on April 17, 1989. This counterclaim did not state a DTPA claim. Rather, Sonora's second amended counterclaim, filed on October 18, 1991, was the first to state a claim under the DTPA. Sonora contends its initial counterclaim was permissible under section 16.069, and its DTPA claim was a permissible amendment under section 16.068, which provides:

If a filed pleading relates to a cause of action, cross action, counterclaim, or defense that is not subject to a plea of limitation when the pleading is filed, a subsequent amendment or supplement to the pleading that changes the facts or grounds of liability or defense is not subject to a plea of limitation unless the amendment or supplement is wholly based on a new, distinct, or different transaction or occurrence.

TEX.CIV.PRAC. & REM.CODE ANN. § 16.068 (Vernon 1986).

EPO's sole contention is that sections 16.068 and 16.069 may not be applied cumulatively to extend the limitations period for the second amended (DTPA) counterclaim. In *MBank Fort Worth, N.A. v. TransMeridian, Inc.*, 820 F.2d 716 (5th Cir.1987), the fifth circuit court of appeals held section 16.068 could not be applied to extend the time to file an amended DTPA counterclaim beyond the 30 days permitted under § 16.069. The court reasoned:

[N]o Texas court has applied § 16.069 to a DTPA counterclaim, let alone allowed a party to piggy-back the two provisions to effectively extend the limitations period for a year.

Section 16.069 was clearly designed to prevent plaintiffs from waiting to file their claims until the statute of limitations had run on the defendant's potential counterclaims. It gave defendants a 30 day window in which to file those counterclaims. It did not give them any more than 30 days.

*MBank*, 820 F.2d at 720 (citations omitted).

In *ECC Parkway Joint Venture v. Baldwin*, 765 S.W.2d 504 (Tex.App.—Dallas 1989,

writ denied), a counter-plaintiff filed a DTPA counterclaim following the expiration of the limitations period. The counter-defendant argued the statute of limitations for DTPA claims is governed solely by section 17.56A of the Texas Business and Commerce Code.[1] The court held as follows:

> [W]e believe ... the legislature intended section 16.069 to have the same effect in DTPA actions as in all other actions. Certainly, the purpose of section 16.069 is as valid for DTPA claims as it is for any other type of claims. We are not obliged to follow [the district court's published opinion in] *MBank,* and inasmuch as we do not find it persuasive, we choose not to do so. Instead, we hold that section 16.069 applies to DTPA claims.

*Baldwin,* 765 S.W.2d at 514.

Section 16.069 states that a counterclaim arising out of the same transaction or occurrence as the main action "must" be filed within 30 days of the answer. It does not state all permissible amendments must also be filed within 30 days. Section 16.068 provides that a counterclaim that was timely filed may be amended unless the amendment grows out of a different transaction or occurrence. We understand section 16.069 to govern the initial filing of a counterclaim, and section 16.068 to govern permissible amendments to a counterclaim.

We disagree with the reasoning of the court in *MBank* and specifically disapprove of it here. We hold that a counterclaim that was timely filed under section 16.069 may be amended pursuant to section 16.068 provided the facts or grounds of liability asserted in the amendment are based on the same transaction or occurrence.

Point of error one is overruled.

■ In its second point of error, EPO contends the trial court erred in overruling its JNOV motion because the evidence proved as a matter of law that EPO did not own the pipeline in question. Therefore, EPO asserts, no title in the pipeline was transferred to Sonora and Sonora had no right to recover transportation fees.

The jury question on actual damages did not segregate damages awarded under the jury's finding that EPO agreed to pay a transportation fee from damages awarded for the jury's finding that EPO committed a DTPA violation. Rather, the jury was instructed that if it found either a transportation agreement or a DTPA violation, it was to consider the following question.

> What sum of money, if any, if paid now in cash, would fairly compensate Sonora Exploration for its damages, if any, resulting from the conduct you have found?
>
> Consider the following elements of damages, if any, and none other. Answer in dollars and cents, if any.
>
> a. The reasonable value for transportation of the gas in question.
>
> b. Attorney's fees.

The jury awarded $171,270.00 as the reasonable value for transportation of the gas. Because compensatory damages for the transportation agreement and the DTPA violation were determined under this question, a finding by this Court that Sonora had no title to the pipeline would not vitiate Sonora's DTPA recovery. Aside from its statute of limitations argument, EPO does not challenge the jury's award of DTPA compensatory damages.

Point of error two is overruled.

In its third point of error, EPO contends the trial court erred in overruling its motion for new trial and JNOV motion because the evidence is legally and factually insufficient to support the jury's finding that EPO agreed to pay Sonora for transportation of EPO's gas. Once again, however, under the compensatory damage question submitted to the jury, the jury was entitled to award Sonora transportation fees if the jury found *either* that EPO agreed to pay them *or* that EPO committed a DTPA violation. The jury made affirmative findings on both issues. EPO has not challenged the sufficiency of the evidence to support the jury's finding that it committed a DTPA violation.

Point of error three is overruled.

1. 17.56A is the predecessor of Tex.Bus & Com.Code Ann. § 17.565 (Vernon 1987). Act of Apr. 30, 1987, 70th Leg., R.S., ch. 167, § 5.02(7), Tex. Gen.Laws 1338, 1361.

■ In its fourth point of error, EPO contends the trial court erred in submitting jury question number five because it was not supported by probative evidence and because it misstated the law.

Question five stated:

Did EP Operating Company agree to pay Sonora Exploration Company for the transportation of EP Operating Company's gas from State Tract 171, well numbers 3 and 4, beginning July 1, 1986 and continuing until September 31, 1989?

In deciding whether the parties reached an agreement, you may consider what they said and did in light of the surrounding circumstances, including any earlier course of dealing. You may not consider the parties unexpressed thoughts or intentions. *If Sonora Exploration and EP Operating Company agreed to other essential terms but failed to specify a price, it is presumed a reasonable price was intended.*

If you find that a custom or usage existed in the oil and gas industry that where a party places its gas in the transmission pipeline owned by another, that the party placing the gas in the pipeline agrees to pay for its transmission, then that custom and usage may be considered in determining the contractual intent of the parties. Answer "Yes" or "No."

ANSWER: YES

(Emphasis added.)

Rule 274 of the Texas Rules of Civil Procedure provides:

A party objecting to a charge must point out distinctly the matter to which he objects and the grounds of his objection. Any complaint as to a question, definition, or instruction, on account of any defect, omission, or fault in pleading, is waived unless specifically included in the objections.

The purpose of rule 274 is to afford trial courts the opportunity to correct errors in the charge, by requiring objections both to clearly designate the error and to explain the grounds for complaint. *Castleberry v. Branscum,* 721 S.W.2d 270, 276 (Tex.1986).

EPO's sole objection to question five was as follows:

Plaintiff further objects to the submission of Question Number 5 and the instruction which states that if Sonora Exploration and EP Operating Company agreed to other essential terms but failed to specify price, it is presumed a reasonable price was intended. There is no evidence in this case that any other terms were agreed to because the defendant of [sic] himself, Mr. Cheatham, the owner of Sonora Exploration Company, testified that there were no discussions with EP Operating prior to the assignment in question and that there were no discussions with EP Operating prior to his invoicing EP Operating for transportation fee [sic], and that those discussions that he referred to were any discussions about a transportation agreement.

EPO's objection to the charge related only to the instruction on when parties agree on essential terms other than price. Therefore, that is the only argument related to question number five EPO has preserved on appeal. *Wilgus v. Bond,* 730 S.W.2d 670, 672 (Tex. 1987). EPO asserted at trial that there was no evidence of agreement on any terms whatsoever.

While the record may not contain evidence of a verbal agreement to charge for transportation fees, there was ample evidence of conduct that tended to show such an agreement. Based upon unobjected to portions of this charge, the jury was entitled to consider the parties' conduct and industry custom and usage to determine whether the parties agreed on the other terms.

EPO's fourth point of error is overruled.

In its fifth point of error, EPO contends the trial court erred in admitting Sonora's exhibits one, two, and three into evidence because they were not properly authenticated. All three exhibits were admitted during the testimony of Lawrence Porter.

■ Exhibit one was purportedly a memorandum from Mr. Jay V. Stribling, an employee of an EPO affiliate, to various EPO corporate officers. Before exhibit one was offered into evidence, Porter was cross-examined as follows:

Q: [L]et me show you what's been marked as Defendant's exhibit 1. Do you see Mr. Stribling's name down there?

A: Yes, sir.

Q: Okay. That's a memo that apparently circulated along with this assignment of everybody to look at; right?

A: Yes, sir.

Q: That's one of you-all's internal documents at one of these various companies; isn't it?

A: Correct.

The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. TEX.R.CIV. EVID. 901(a). Section b of rule 901 contains a nonexclusive list of methods for authenticating or identifying evidence. *City of Corsicana v. Herod*, 768 S.W.2d 805, 814 (Tex. App.—Waco 1989, no writ).

We find Porter's admission on cross-examination, apparently against EPO's interest given EPO is claiming the letter was harmful, that the letter in question was an "internal document" was sufficient to support its admission.

■ Exhibit two was admitted after the following cross-examination testimony by Mr. Porter:

Q: If you would look at Defendant's Exhibit 2. It's the document entitled up at the top "Land Contracts Department," right?

A: Yes.

Q: That's how Mr. Stribling would start his things; we know that from all the way back in '86 when he circulated it; right?

A: Yes, sir.

Q: And if we look there at the bottom of Defendant's Exhibit No. 2, just like on this enlargement of Defendant's Exhibit No. 1, we see Mr. Stribling's name; right?

A: Yes, sir?

Q: And so far as you know, that's a business record of you-all's Land Contracts Department, isn't it?

A: As far as I know, yes, sir.

Mr. Fontaine: Offer Defendant's Exhibit No. 2, Your Honor.

Mr. Callan: Object. Improper foundation. This witness has no personal knowledge of it, it's not a proper foundation as a business record.

The Court: Stribling is one of your people, isn't he?

A: Yes, sir, he is an employee of ours.

The Court: Overrule the objection, let it be admitted.

Shortly after this exchange, Porter identified the signature on the second page of the exhibit as that of Stribling. We find the appearance and internal pattern testified to and Porter's identification of Stribling's signature, against EPO's interest, was sufficient to authenticate the exhibit.

Finally, EPO has conceded in open court that the admission of exhibit three was not harmful to its case, adding that it may have actually been helpful.

Point of error five is overruled.

■ In its final point of error, EPO contends the trial court erred in overruling its motion for new trial because the jury's award of $171,270 in actual damages was grossly excessive and the evidence was insufficient to support that award.

Sonora's expert witness, Mr. Cook, testified that in his opinion the reasonable value for transportation of gas was twenty cents per thousand cubic feet. Testimony was presented that the amount of gas transported through the pipeline was 1,551,579 thousand cubic feet. Multiplying these two figures together provides a total figure of $310,315.80.

EPO's expert witness, Mr. Graves, testified the reasonable value for transportation of gas was .32 cents per thousand cubic feet for a total of $4,965.05.

■ It is within the province of the jury to weigh expert testimony as to valuation and to determine a reasonable value. *Community Public Service Co. v. Andrews*, 590 S.W.2d 563, 566 (Tex.App.—Houston [1st Dist.], writ ref'd n.r.e.). The jury may blend the evidence admitted before it, or accept or reject

the testimony of any particular witness. *Id.* We find there is sufficient evidence to support the jury's award of compensatory damages.

EPO's final point of error is overruled, and the judgment of the trial court is affirmed.